UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-61198-CIV-ALTONAGA/O'Sullivan

SHANE FLAUM,

          Plaintiff,

v.

DOCTOR'S ASSOCIATES, INC.,

          Defendant.
_____/

**MOTION AND MEMORANDUM OF DEFENDANT DOCTOR'S
ASSOCIATES, INC. TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

                                      John R. Hargrove
                                      HARGROVE LAW GROUP
                                      433 Plaza Real, Suite 275
                                      Boca Raton, FL 33432
                                      Telephone: (561) 962-4191
                                      Email: jrh@hargrovelawgroup.com

                                      Peter Breslauer
                                      MONTGOMERY MCCRACKEN
                                         WALKER & RHOADS, LLP
                                      123 South Broad Street
                                      Philadelphia, PA 19109
                                      Telephone: (215) 772-7271
                                      Email: pbreslauer@mmwr.com

                                      ATTORNEYS FOR DEFENDANT
                                      DOCTOR'S ASSOCIATES, INC.

Defendant Doctor's Associates, Inc. ("Doctor's Associates") respectfully moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), because Plaintiff has failed to allege injury in fact and therefore lacks standing to litigate his case before this Court. The Court accordingly lacks subject matter jurisdiction over his claim and the Complaint should be dismissed.

I.     INTRODUCTION

Plaintiff Shane Flaum ("Flaum") has sued Doctor's Associates for an alleged technical violation of the Fair and Accurate Credit Transactions Act, 15 U.S.C. §1681 *et seq.* ("FACTA"), a subset of the Fair Credit Reporting Act ("FCRA"). Doctor's Associates franchises the popular Subway sandwich shops throughout the United States. Flaum claims that on or about June 3, 2016, he purchased goods from a Subway store in Pompano Beach, Florida, and that his printed debit card receipt from that transaction included the last four digits of his debit card (which is *not* a violation of FACTA) as well as the expiration date of his debit card (which, if true, would violate FACTA). Compl. ¶¶ 36-38. Flaum asserts that as a result of this technical violation, he and other members of the class he seeks to represent are entitled to recover statutory damages of $100 to $1000 per receipt under FACTA, 15 U.S.C. §1681n(a). He does not seek any actual damages, only statutory damages. Compl. ¶¶ 2, 60, 75.

However, even if Flaum's factual allegations are accepted as true, he cannot establish that he has suffered any actual "injury in fact," *i.e.*, an injury that is "concrete and particularized," and is "actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Indeed, basic principles of standing "require a concrete injury even in the context of a statutory violation." *Id*. at 1549. In the absence of any such injury in fact, Flaum does not have standing to pursue his claim, and therefore this Court, as a matter of constitutional

1

law, does not have subject matter jurisdiction of the present action.

Significantly, the *only* alleged "harm" Flaum pleads is that he and the other members of the proposed class have been "burdened with an elevated risk of identity theft." Compl. ¶¶ 20, 75. This is not sufficient under the law. Courts have repeatedly held that alleging only a generalized – "elevated" or "heightened" – risk of future harm is *not* injury in fact and is *not* sufficient to confer standing. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.'") (emphasis in original).

Notably, nowhere in his Complaint does Flaum allege that his debit card number or expiration date have fallen into the hands of an identity thief or a perpetrator of credit card fraud against him. Quite to the contrary, his debit card receipt has apparently never left his possession (or that of his attorneys). Flaum has suffered absolutely *no* adverse consequences as a result of his debit card receipt. Flaum supposed injury is entirely conjectural; it is not "actual" and "concrete" injury in fact and he therefore lacks standing to maintain this action. The Court should accordingly dismiss this action for lack of subject matter jurisdiction.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     FACTA

Congress enacted FACTA in 2003 to protect consumers against exploitative credit practices and identity theft. Compl. ¶ 15. The Act provides that "no person shall print more than the last 5 digits of the card number or the expiration date upon any receipt to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1). Any person who willfully violates the Act shall be liable for "any actual damages sustained by the consumer as a result of the failure or

damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

### B. Plaintiff's Transaction

Flaum alleges that on or about June 3, 2016, he purchased unnamed "goods" at a Subway located in Pompano Beach, Florida and paid for those "goods" with a personal Visa debit card. Compl. ¶¶ 36-37. After his debit card was processed, Flaum received a receipt with "the full expiration date, along with the last four digits of his card." *Id.* ¶ 37. The receipt allegedly shows that Flaum paid with a debit card, the store location, transaction date, time, and the name of the cashier. *Id.* ¶ 38.

Flaum does not provide any further details about the transaction. More importantly, Flaum does not allege that he has suffered any actual "injury in fact" as a result of receiving a non-compliant receipt. He does *not* allege that his identity has been stolen, or that he experienced credit card fraud, or any other actual damage or injury in fact. Indeed, there are no allegations that the allegedly non-compliant receipt has ever even left his or his attorneys' possession. Nevertheless, Flaum seeks to recover, on behalf of himself and the class he purports to represent, the "statutory damages" authorized by FACTA, *i.e.*, $100 to $1000 for every non-compliant receipt that Doctor's Associates allegedly issued during the class period. But a statute providing for damages in the absence of any actual injury in fact, cannot confer standing upon Flaum or the members of his purported class.

### III. LEGAL STANDARD

"Standing is a jurisdictional inquiry, and a 'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." *Am. Civil Liberties Union of Florida, Inc. v. Dixie Cty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A defendant may move to dismiss under Rule 12(b)(1) for lack of

3

subject matter jurisdiction by either a facial or factual attack. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). As in this case, "[a] 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quotations, citations, and alterations omitted). "Such a facial attack requires the Court to determine if Plaintiff has alleged facts to establish her standing." *Gesten v. Stewart Law Group., LLC*, 67 F. Supp. 3d 1356, 1357 (S.D. Fla. 2014). In this case, Doctor's Associates moves to dismiss based on a facial attack.

## IV.    ARGUMENT

### A.    The Principles of Standing Are Constitutionally Mandated.

Under the United States Constitution, the "judicial power of the United States" extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1, 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). As the Supreme Court recently explained, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. . . . The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo,* 8136 S. Ct. at 1547 (citation omitted).

The "irreducible constitutional minimum" of standing consists of three elements. "A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

4

*Id*. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*.

The "first and foremost" of standing's three elements (and the one that concerns us here) is "injury in fact." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). Such "injury in fact" is "a constitutional requirement," and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). And the principles regarding standing are not altered in the putative class action context. Named plaintiffs seeking to represent a class "must allege and show that *they personally* have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong." S*imon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (emphasis added).

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Article III standing requires a concrete injury even in the context of a statutory violation.*" *Spokeo*, 136 S. Ct. at 1549 (emphasis added). Thus it is impermissible, under Article III, to apply FACTA to authorize a lawsuit merely for the issuance of a non-compliant credit or debit card receipt. A plaintiff under FACTA, such as Flaum, is still required to establish that he has indeed suffered an injury in fact that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."

*Spokeo*, 136 S. Ct. at 1549.

In the present case, it is clear that this is all that Flaum has alleged:  a bare procedural violation –  the printing of his debit card expiration date on the receipt –  that is divorced from any concrete harm to Flaum.  Flaum simply cannot satisfy the constitutional standing requirements, and thus this Court does not have subject matter jurisdiction of this action.

### B. Flaum Has Failed to Allege a Concrete Injury in Fact Sufficient to Confer Standing Under Article III.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist.  . . .  When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'"  *Spokeo*, 136 S. Ct. at 1548 (citations omitted).  Intangible harm, while more difficult to recognize, may nevertheless be sufficiently "concrete" to constitute injury in fact in an appropriate case.  In making this inquiry, however, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.* at 1549.  The mere fact that Congress provided for statutory damages for violation of a statute, as Congress has done with FACTA, is *not* sufficient in itself to establish an actual injury in fact.  "Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id*.

*Spokeo* arose under the Fair Credit Reporting Act, though not under FACTA.  The

Supreme Court ultimately remanded the case so that the court below could determine whether the plaintiff there had alleged sufficient facts to establish an actual and concrete injury in fact. *Id.* at 1550. In doing so, it provided some guidance to the lower courts. It stated, for example, that a "bare procedural violation" of the FCRA may not constitute an actual and concrete injury in fact. "A violation of one of the FCRA's procedural requirements may result in no harm," and "not all inaccuracies cause harm or present any material risk of harm." *Id*. As an example, the Court offered the dissemination of a credit report whose only inaccuracy was an incorrect zip code for the debtor. "It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id*.

The alleged technical violation of FACTA in the present case – the printing of the card's expiration date on a receipt – is very much like the incorrect zip code in the Court's example. It is difficult to imagine how, without more, this could work any concrete harm to Flaum. Flaum has not suffered, and has not alleged, any out-of-pocket damages or losses. It has not damaged or impaired his reputation or any intangible rights he may enjoy. He has not been diminished in any material way. The mere printing of a debit card's expiration date, without any publication or dissemination of that expiration date to third parties, does not create any sort of harm that has traditionally provided a basis for a lawsuit in English or American courts. In short, it has not caused any actual, concrete or imminent harm to Flaum. It is a situation falling squarely within the teaching of *Spokeo* – a "bare procedural violation, divorced from any concrete harm" that cannot confer Article III standing. 136 S. Ct. at 1549.

Flaum essentially concedes the lack of any concrete, presently-existing and imminent injury in fact. The *only* potential injury he alleges is that he and other members of the proposed class have been "burdened with an elevated risk of identity theft." Compl. ¶¶ 20, 75. But the

courts have repeatedly held that such an "elevated risk of identity theft" is *not* sufficiently imminent to constitute actual injury in fact.

The Supreme Court established the relevant standard in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). Beginning with the proposition that an injury in fact sufficient to confer standing on a plaintiff must be an injury that is "concrete, particularized, and actual or imminent," the Court held that, in order to be "imminent," the "threatened injury must be *certainly impending* to constitute injury in fact," and that "'[a]llegations of *possible* future injury' are not sufficient." *Id.* at 1147 (emphasis in original).

In *Clapper*, the plaintiffs were attorneys and organizations who communicated with potential targets of Government surveillance located internationally, and who claimed the threat of such surveillance compromised their ability to locate witnesses, cultivate sources, obtain information, and communicate confidential information to clients. *Id.* at 1145. They claimed they had suffered harm because the threat of surveillance forced them to travel abroad to have in-person communications, thereby incurring expenses. *Id.*

The Supreme Court held that plaintiffs' theory failed the "certainly impending" test because it "relie[d] on a highly attenuated chain of possibilities." *Id.* at 1148. The Court found it speculative whether the Government would "imminently target" plaintiffs' communications, and even if it did, it was speculative whether the Government would use authorized surveillance to do so. *Id.* at 1149-51. The Court also rejected plaintiffs' argument that they were forced "to take costly burdensome measures to protect the confidentiality of their international communications." *Id.* at 1143. A plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Id.*

In a decision issued only a few months before *Spokeo*, this Court reaffirmed the

principles of *Clapper* and held that the mere possibility of future injury is not sufficiently concrete and imminent to confer Article III standing. In *Case v. Miami Beach Healthcare Group, Ltd.*, No. 14-CV-24583, 2016 WL 1622289 (S.D. Fla. Feb. 26, 2016) (Martinez, J.), the plaintiff, as part of the patient admission process, provided the defendant hospital with sensitive personal information, including her name, date of birth and protected health information. The hospital later announced that an employee had gained unauthorized access to the patient database, and had removed the records of over 85,000 patients, including those of the plaintiff. *Id.* at *1.

Judge Martinez determined that the plaintiff did not have Article III standing to pursue her claims. Although the plaintiff alleged that an unauthorized person had accessed her sensitive personal information, there was no allegation that her information was actually misused, or that she suffered any type of harm, economic or otherwise, from the unauthorized access and deletion of her information. Thus she had not suffered an injury in fact that was concrete, actual or imminent, as opposed to conjectural or hypothetical, and the court dismissed her case. *Id.* at *2, *3.

Judge Martinez distinguished the case of *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), in which the Eleventh Circuit had found that the plaintiffs did have standing to sue a health service provider after two laptop computers, which contained sensitive personal information of the plaintiffs and others (including addresses, phone numbers and social security numbers), had been stolen from the defendant's offices. But the crucial difference between *Resnick* and *Case* was that, in *Resnick*, the plaintiffs had become the actual victims of identity theft. *See Case*, 2016 WL 1622289, at *2. That fact was sufficient to create "actual," and not just "speculative" harm that was sufficient to confer standing on the plaintiffs. The present

9

action is just like *Case*, and unlike *Resnick*, in that Flaum has not become an actual victim of identity theft.

Another relevant pre-*Spokeo* case is *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011). There, defendant Ceridian was a payroll processing firm that necessarily collected sensitive personal information about the employees of its commercial business customers, including social security numbers, dates of birth and bank account information. An unknown hacker infiltrated Ceridian's system and gained access to this sensitive personal information. The plaintiffs sued, claiming that they had suffered, as Flaum alleges, "an *increased risk* of identity theft," had "incurred costs to monitor their credit activity," and had "suffered from emotional distress." *Id.* at 40 (emphasis added).

The Third Circuit affirmed the district court's dismissal of the case for lack of standing. It noted that the plaintiffs' allegations consisted solely of "hypothetical, future injury," which relied only on "speculation" that the hacker had read, copied and understood the plaintiffs' personal information, intended to commit future criminal acts by misusing the information, and might make unauthorized transactions in the plaintiffs' names, to their detriment. *Id.* at 42. The court noted that "[u]nless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id.* "[W]e cannot now describe how Appellants will be injured in this case without beginning our explanation with the word "if": *if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully, only then will Appellants have suffered an injury." *Id.* at 43 (emphasis in original). That multiple speculation prevented any determination that the plaintiffs had standing.

The present case is no different. The expiration date on Flaum's debit card has not been

10

misused in any fashion. Any "elevated risk of identity theft" is dependent on a number of imponderable "ifs" that may or may not ever occur. The alleged future harm is neither imminent nor certainly impending, and cannot constitute the actual, concrete injury in fact that is necessary to create standing. Since there has been no misuse, there has been no real harm.

Similarly, in *In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14 (D.D.C. 2014), the defendant suffered a breach of its personnel database when several backup tapes were stolen from an employee's car. A number of plaintiffs, who were potential victims of this data breach, sued. However, the majority of the plaintiffs had not been harmed by the data breach. The court concluded that "the mere loss of data – without evidence that it has been viewed or misused – does not constitute an injury sufficient to confer standing." Those plaintiffs' claims were dismissed. *Id.* at 19. In contrast, two plaintiffs were able to establish that their data had been abused and they were victims of identity theft. They were permitted to move forward with their claims. *Id*.

In yet another data breach case, those plaintiffs who admitted (like Flaum) that they "have not suffered identity theft, nor have they been victimized by fraud as a result of the [data] loss," had their claims dismissed – because "their claims are future-oriented, hypothetical, and conjectural." *Hammond v. The Bank of New York Mellon Corp.*, No. 08-CIV-6060, 2010 WL 2643307, at *5, *7 (S.D.N.Y. June 25, 2010). The court reaffirmed the principle that "an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy." *Id.* at *2 (quoting *Shafran v. Harley-Davidson, Inc.*, No. 07-CIV-1365, 2008 WL 763177, at *2 (S.D.N.Y. Mar. 20, 2008)).

Finally, after the Supreme Court decided *Spokeo* in May 2016, several other courts have reaffirmed that plaintiffs must allege actual, concrete, and imminent, clearly impending injuries –

and not mere procedural violations of a statute – in order to establish standing to sue.

In *Smith v. Ohio State Univ.*, No. 15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016), for example, the plaintiffs claimed that in the course of the hiring process, the defendant had presented them with an authorization form for a background credit check that supposedly included extraneous information, such as a liability release, that allegedly constituted a violation of the Fair Credit Reporting Act.  *Id.* at *1.  The court held that although this may have been a technical violation of the FCRA, the plaintiffs "did not suffer a concrete consequential damage as a result of this breach of the FCRA," and that therefore under *Spokeo*, they could not establish a "concrete and particularized injury-in-fact" and had no Article III standing.  Their claims were therefore dismissed.  *Id.* at *4.

In *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016), the plaintiff claimed that the defendant, his cable service provider, had collected personally identifiable information, including addresses, social security numbers and phone numbers, and  continued to maintain this information even after the plaintiff had terminated his service – which he alleged to be a violation of the Cable Communications Policy Act, 47 U.S.C. § 551(e) ("CCPA").  *Id.* at *1.

The plaintiff had alleged that he suffered from an "elevated" risk to his privacy, because the cable provider had "an enormous capacity to collect and store personally identifiable data about each cable subscriber."  *Id.* at *4.  But the court concluded that even if this was technically a violation of the statute, the plaintiff had not suffered a "concrete" injury as a result of the defendant's retaining of this information, and thus, under *Spokeo*, he had no standing to bring his claim.  The plaintiff did not allege "that the defendant has disclosed his information to a third party. . . .  He does not allege that he has been contacted by marketers who obtained his

information from the defendant, or that he has been the victim of fraud or identity theft. He alleges only that the CCPA requires cable providers to destroy personal information at a certain point, and that the defendant hasn't destroyed his." *Id*. The court concluded that those allegations did not suffice under *Spokeo* to create an actual injury in fact.

And in *Khan v. Children's Nat'l Health System*, No. 15-CV-2125, 2016 WL 2946165 (D. Md. May 19, 2016), the plaintiff was a patient in the defendant hospital, and had provided the defendant with sensitive personally identifiable information. The hospital's database was hacked, and its accounts, including the plaintiff's information, were "*potentially* exposed in a way that *may have* allowed hackers to access information…." *Id.* at *1 (emphasis added). The court dismissed the plaintiff's claim for lack of standing because she had not alleged a sufficient injury in fact. *Id.* at *7. Rather, she had alleged that she "remains concerned that her personal information will be misused, but she does not claim that she or anyone else affected by the data breach has learned of any misuse to date." *Id.* at *1. She alleged that she faced "an imminent threat of identity theft," *id.* at *3, and cited statistics to the effect "that data breach victims are 9.5 times more likely to suffer identity theft and that 19 percent of data breach victims become victims of identity theft," *id.* at *6. This was held to be insufficient to establish injury in fact. The court concluded that "[t]hese specific statistics, which are cited in numerous other cases, do not by themselves establish that there is 'certainly impending' harm under the specific facts of a given case." *Id*.

Doctor's Associates is aware of three cases, decided after *Spokeo*, in which courts have sustained a plaintiff's injury-in-fact standing in the face of a *Spokeo* challenge. However, those decisions are readily distinguishable from the present case.

In *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6,

2016), the plaintiff owed a debt to the defendant hospital. The hospital sent a letter to the plaintiff concerning this debt, but allegedly did not include in this letter certain disclosures that were required to be included under the Fair Debt Collections Practices Act ("FDCPA"). The district court had granted summary judgment to the hospital on the merits. While the matter was on appeal, the U.S. Supreme Court decided *Spokeo*, and the hospital, in a supplemental filing submitted just before oral argument, raised the additional argument that the plaintiff lacked standing because she admitted she had not suffered any "actual damages" by reason of the hospital's alleged statutory violation. *Id.* at *1.

The Eleventh Circuit concluded that the plaintiff had nevertheless suffered a sufficiently "concrete" and "not abstract" injury to satisfy *Spokeo* and give her standing to sue. *Id.* at *3. It reasoned that the statute in question had given the plaintiff a new and affirmative legal right – the right to receive certain required disclosures in all communications covered by the FDCPA, and that she had suffered a "real," albeit intangible, injury by not receiving the disclosures she was entitled to receive. *Id*.

The Eleventh Circuit likened this situation to the one presented in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which an African-American "tester-plaintiff" alleged that she had been falsely told that the defendant had no apartments to rent, while the defendant told a white tester that apartments were available. The tester did not actually intend to rent an apartment, but was merely posing as a renter to collect evidence of unlawful practices, and thus it might be argued had not suffered any actual damages. But the Supreme Court held that the relevant statute had established "an enforceable right to truthful information concerning the availability of housing," and that the tester had suffered a concrete injury of the very sort the statute was designed to guard against. *Id.* at 373-74; *see also Church*, at *3.

The injury in *Church* is much more substantive than here – and, critically, resulted in an injury directly suffered by the plaintiff, who was deprived of critical information that the statute deemed to be a crucial prerequisite to a fair and open debt collection process. Not having that information put the plaintiff at a negotiating disadvantage. In contrast, here the statutory violation consists of the printing of a debit card expiration date on a receipt that is not disclosed to anyone and that has not caused, and cannot cause, *any* concrete harm to Flaum – who is not relieved by the class-action form of his lawsuit of showing harm to himself. The current case is much different from the harm identified in *Church*, and is more like the incorrect, but insignificant, zip code in a credit report that the *Spokeo* court determined would be only a technical or "procedural" violation that does not cause any actual or concrete injury.

In *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016), the plaintiffs alleged that the defendants, who operated a website that was geared towards children and offered streaming videos and interactive games, had collected certain personal information about the children who registered for the website, and had allegedly disclosed this personal information to third parties. This disclosure was alleged, among other things, to violate the Video Privacy Protection Act. *Id.* at *1, *3. The defendants asserted that the plaintiffs lacked standing to bring the suit, based on the principles announced in *Spokeo*, but the Third Circuit held that, under the circumstances of the case, the plaintiffs had established an actual injury in fact that was sufficient to confer standing. *Id.* at *7.

In particular, the court determined that, while the harm suffered by the plaintiffs might be "intangible," it was nevertheless a "concrete" harm in that it involved "a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information." *Id*. The fact of disclosure distinguishes *Nickelodeon* from the present case. In *Nickelodeon* (in contrast to *Case*, *Reilly*,

15

*SAIC*, *Hammond*, *Smith*, *Gubala* and *Khan*, *supra*), the protected personal information had actually been disclosed to third parties.  This was not merely a case of personally sensitive information having been hacked or accessed, without any indication that it had been disclosed or misused by anyone.  Moreover, the statute in question in *Nickelodeon* specifically prohibited the *disclosure* of the protected information.  This was therefore more than a technical, procedural violation of the relevant statute.  The Third Circuit was thus able to conclude that the harm was real, concrete and imminent.

In contrast, in the present case, the alleged violation is simply printing an expiration date on a debit card receipt.  There was no disclosure of any data to the outside world,[1] and no misuse of that expiration date, and thus there is no concrete or imminent threat that the information might result in identity theft or other actual harm to Flaum.

The other post-*Spokeo* case that found sufficient injury in fact to support the plaintiff's standing to sue is *Mey v. Got Warranty, Inc.*, No. 15-CV-101, 2016 WL 3645195 (N.D. W.Va June 30, 2016).  The plaintiff in that case sought to enforce the consumer privacy provisions of the Telephone Consumer Protection Act, which provides for statutory damages for unsolicited automatically-dialed telemarketing calls.  The court held that the plaintiff was able to establish a concrete and particularized injury in fact, which was not conjectural or hypothetical, and thus had standing to pursue her claims.  The repeated telemarketing phone calls the plaintiff alleged caused concrete harm, including an intrusion into the privacy and seclusion of the consumer, the intrusion upon and occupation of the capacity of the consumer's cell phone, and the wasting of the consumer's time or causing the risk of personal injury due to interruption and distraction.  *Id.*

---

[1] Flaum's own debit card receipt, on which he bases his present claims, has obviously never left his possession (or that of his attorneys); he nowhere alleges he lost or misplaced it, or that anyone else obtained access to it.

at *3-*5. Such harassment and invasion of privacy are the kinds of harms that have traditionally been a basis for a lawsuit under the common law, and therefore the court concluded that the plaintiff had standing to sue. *Id.* at *6.

That sort of harm is very different from the speculative harm alleged in the present case. Flaum has not suffered any damages, actual loss, intrusion into his privacy, inconvenience or harassment as a result of the printing of his debit card expiration date on his receipt. His only "harm" is a speculative "elevated risk of identity theft" – that may or may not ever come to pass. As numerous courts have held, that "elevated risk" is too remote and speculative to constitute injury in fact. Flaum does not have standing to sue and the Court should accordingly dismiss the Complaint.

## V. CONCLUSION

For all of the above reasons, Doctor's Associates respectfully requests that the Court dismiss the Complaint.

Dated: July 12, 2016                                  Respectfully submitted,

/s/ *John R. Hargrove*
John R. Hargrove
HARGROVE LAW GROUP
433 Plaza Real, Suite 275
Boca Raton, FL   33432
Telephone: (561) 962-4191
Email: jrh@hargrovelawgroup.com

Peter Breslauer
MONTGOMERY MCCRACKEN
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA   19109
Telephone: (215) 772-7271
Email: pbreslauer@mmwr.com

ATTORNEYS FOR DEFENDANT
DOCTOR'S ASSOCIATES, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ John R. Hargrove