UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

SHANE FLAUM, and
JASON ALAN, individually and on behalf of
others similarly situated,
    Plaintiffs,

v.

DOCTOR'S ASSOCIATES, INC.,
a Florida corporation, doing business as
SUBWAY,

    Defendant.
_____/

CASE NO. 16-cv-61198-CMA

CLASS ACTION

# CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
# FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

1. This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"), which requires Defendant to truncate certain credit card information on receipts. Despite the clear language of the statute, Defendant willfully or knowingly chose not to comply. As such, Plaintiffs and certain other consumers who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were provided with a violative receipt, suffered violations of § 1681c(g).

2. As a result of Defendant's reckless conduct, Plaintiffs and the Class are entitled to an award of statutory damages and other relief as further detailed herein.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

4.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

5.     Plaintiff Shane Flaum ("Flaum or Plaintiff") is a natural person, who resides in Broward County, Florida.

6.     Plaintiff Jason Allen ("Alan or Plaintiff") is a natural person residing in California.

7.     Defendant, DOCTOR'S ASSOCIATES, INC. ("Defendant" or "DAI"), is a Florida corporation, which does business under the brand name, SUBWAY®. Defendant's principal address is 700 S. Royal Poinciana Boulevard, Suite 500, Miami Springs, Florida 33166, and whose registered agent for service of process is in the state of Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

8.     Defendant owns the largest global fast food restaurant franchise with more than 44,000 locations, 27,000 of which are located in the United States.[1]

9.     Defendant derives a royalty fee of 8% of gross sales from each SUBWAY® store operated in the United States.[2]

10.    In 2016, it was reported that DAI's annual revenues were more than $19 billion dollars.[3]

11.    Defendant exercises control over its SUBWAY® franchisees, including but not limited to the type of point of sale (POS) terminal utilized in its many restaurants.[4]

---

[1] Source: http://www.forbes.com/companies/subway/ (last accessed June 4, 2016).
[2] Source: http://www.franchisedirect.com/directory/subway/ufoc/915/ (last accessed: June 6, 2016)
[3] Source: http://www.forbes.com/companies/subway/ (last accessed: June 4, 2016).

12.     In fact DAI was sued in the District of Connecticut for claims arising from DAI's alleged involvement in an unlawful tying arrangement whereby purchasers of Subway franchises were required to also purchase certain computerized cash-register, or Point-of-Sale ("POS") systems from an exclusive vendor that DAI owned. *See Subsolutions Inc, et al v. Doctor's Associates, et al.,* No. 98-cv-00470-AHN (D. Conn. Filed Mar. 12, 1998).

13.     Upon information and belief, a portion of the profits derived from Defendant's in store sales is specifically directed to compliance with certain federal privacy laws and securing customer data.[5]

14.     Those customers who make purchases from a SUBWAY® store with a credit or debit card do so with the expectation that Defendant will secure their data, protect their personal information, and comply with federal privacy laws.

## FACTUAL ALLEGATIONS

### *Background of FACTA*

15.     Identity theft is a serious issue affecting both consumers and businesses. The Federal Trade Commission, received over 490,000 consumer complaints about identity theft, representing a 47 percent increase over the prior year.

---

[4] Source: http://www.computerweekly.com/news/2240088023/Subway-deploys-new-POS-across-30000-outlets (last accessed: June 5, 2016).

[5] *See generally*, http://www.subway.com/en-us/legal/privacystatement-dai#1_Scope_of_This_Privacy_Statement ("Your privacy is very important to DAI. This Privacy Statement discloses how Doctor's Associates Inc., ("DAI") collects, protects, uses, and shares Personal Information gathered about you. DAI's privacy practices are consistent with … All applicable country, national, state, and local Data Protection and Security Laws (some country's laws require country specific information in a Privacy Statement;" "All reasonable steps are taken to safeguard your Personal Information against loss, unauthorized access, use, modification, disclosure, or any other misuse.") (last accessed: June 4, 2016).

16.     Congress enacted FACTA to prevent actual harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

17.     "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

18.     Upon signing FACTA into law, President Bush also remarked that "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." Id.

19.     One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

20.     Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

(the "Receipt Provision").

21.     By shirking the requirements of a federal privacy statute by not complying with the Receipt Provision, Defendant has caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale

4

from credit or debit card transaction is intended to protect consumer data, including the masking of credit card or debit card expiration dates as required by both state and federal laws.

22.     Defendant also invaded Plaintiffs' privacy by disclosing Plaintiffs' private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

## FACTA WAS WIDELY PUBLICIZED

23.     After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

24.     The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." [6] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

25.     Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the

---

[6]  Source:   http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (last accessed: June 4, 2016).

customer's copy of the receipt" and "the expiration date should not appear at all."[7]

26. Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[8]

27. Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

28. In the interim, Card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list

---

[7] Source: http://www.runtogold.com/images/rules_for_visa_merchants.pdf (last accessed: June 4, 2016).
[8] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (last accessed: June 4, 2016).

6

>of best practices to be used until any new global rules go into effect.
>
>*See* Visa Alert attached hereto as Exhibit A.

29.     According to data from the Federal Trade Commission's 2014 Consumer Sentinel Network report, the Miami-Fort Lauderdale-West Palm Beach ranks number one for identity theft-related consumer complaints, with 316.2 complaints per 100,000 people. That's 50% percent more than Seattle-Tacoma-Bellevue, which ranks a distant second. Also, six of the top twelve metropolitan areas for identity theft are in Florida, according to the report.[9]

30.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

### *Defendant's Prior Knowledge of FACTA*

31.     Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

32.     Not only was Defendant informed it could not print the expiration date of credit or debit cards, it was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

---

[9] Source: https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2014/sentinel-cy2014-1.pdf (last accessed: June 4, 2016).

33. As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, attached hereto.

34. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, attached hereto.

35. Despite the plethora of warnings, on April 13, 2007, a federal lawsuit was filed against DAI for failing to omit credit card expiration dates from receipts it created at the point of sale of its products. *See, Kennedy v. Subway et al,* No. 07-cv-01504-SD (E.D. Pa. Filed Apr. 13, 2007). Apparently, unpersuaded to ensure its retail outlets were in compliance with federal law, Defendant was sued yet again, on at least three other occasions, for FACTA violations. *See, Hanlon v. Doctor's Associates, Inc. et al.*, No. 07-cv-01392-NBF (W.D. Pa. Filed Oct. 15, 2007); *Puerto v. Subway #33183, Inc. et al*, No. 08-cv-60486 (S.D. Fla. Filed Apr. 3, 2008; *Jackson v. Subway #25488*, No. 09-cv-03276-MIS (N.D. Ill. Filed May 31, 2009).

36.     Now, despite being previously sued for violating FACTA **on at least four other occasions**, Defendant has once again knowingly and willfully violated the aforesaid federal law by printing receipts displaying the full expiration date, along with the last four digits of its customers' credit or debit cards.  *See Redman v. RadioShack Corp.*, --- F.3d ----, 2014 WL 4654477, *14 (7th Cir. Sept. 19, 2014) (explaining that issue of willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

### *Flaum's Factual Allegations*

37.     On or about June 3, 2016, Flaum purchased certain goods from one of Defendant's restaurants located in Pompano Beach (Broward County), Florida.

38.     Flaum paid for the subject goods using his personal Visa® debit card at which time he was presented with an electronically printed receipt bearing the full expiration date, along with the last four digits of his card.

39.     In addition to bearing the full expiration date along with the last four digits of the account, the receipt identifies whether the subject method of payment is a debit card (as opposed to a credit card).  All purchases made with a credit or debit card cause to be printed a receipt which also electronically captures and records the store location, transaction date and time, and name of the cashier.

### *Alan's Factual Allegations*

40.     On or around June 3, 2016, Alan went to Defendants' store at 6800 Reseda Blvd. Ste. B, Reseda, California 91335, and purchased a turkey salad from Defendants.  Alan purchased these items with a Credit Card ending in -1320.

41. Defendant's franchise's employee then handed Alan an electronically-generated register receipt which displayed Alan's credit card expiration date, in direct violation of FACTA.

42. By printing the expiration date of Alan's credit card on his receipt, Defendant has violated 15 U.S.C. § 1681c(g)(1).

43. Defendants' actions constitute an irresponsible disregard for Plaintiffs' and similarly situated consumers' credit information.

### Defendant's Misdeeds

44. At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

45. At all times relevant herein, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiffs.

46. It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

47. Upon information and belief, the violations at issue arose when Defendant installed thousands of VeriFone® VX820 POS systems in its many retail restaurants across the United States.

48. Upon information and belief, prior to the nationwide rollout of the VeriFone® VX820 point of sale system, Defendant had a written policy in place requiring the truncation of credit card account numbers and masking of expiration dates; this is evidenced by the fact that prior to the installation of the aforementioned retail system, Defendant was actually truncating credit card account numbers.

10

49.     Upon information and belief, a manual was provided with each VeriFone® VX820 point of sale system which explained that the retailer is able to determine which fields will appear on a printed receipt and further explained that the retailer is able to truncate credit card numbers and mask expiration dates.[10]

50.     The manual also specifically warns of the need to protect certain data elements, like the expiration date:

> "These data elements must be protected if stored in conjunction with the PAN. This protection should be per PCI DSS requirements for general protection of the cardholder environment. **Additionally, other legislation (for example, related to consumer personal data protection, privacy, identity theft, or data security) may require specific protection of this data**, or proper disclosure of a company's practices if consumer-related personal data is being collected during the course of business.[11] (emphasis added).

51.     Upon information and belief, it would take an individual less than thirty seconds to run a test receipt in order to determine whether the Verifone point-of-sale system was in compliance with federal law(s) or Defendant's own alleged written policy requiring the masking of expiration dates.

52.     More so than most companies, Subway was on heightened notice of the risks associated with identity theft.  In a scheme dating back at least to 2008, a band of Romanian hackers is alleged to have stolen payment card data from the point-of-sale (POS) systems of hundreds of

---

[10] Source: http://support.verifone.com/verifone/community/42550/PAYware%20SIM%20Integration%20Guide%202.0.2.4.pdf (last accessed: June 6, 2016).
[11] Id.

small businesses, including more than 150 Subway restaurant franchises and at least 50 other small retailers.[12]

53. Because Defendant prints the full expiration date on the credit card receipt, any person, including an identity thief, can readily discern whether the card is still active and valid, thereby allowing identity thieves to narrow their focus to the more "viable" targets.

54. As explained in carious VeriFone® manuals, the digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

55. Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant continues to issue point of sale receipts, which contain the full expiration date of the credit card or debit card, in direct violation of the Receipt Provision of the FCRA.

56. Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

57. Notwithstanding the fact that Defendant had years to comply with FACTA's requirements and the fact Defendant was previously sued for violating the exact same federal statute, Defendant continues to act in conscious disregard for the rights of others. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. Sept. 19, 2014) (explaining that issue of

---

[12] Source: http://arstechnica.com/business/2011/12/how-hackers-gave-subway-a-30-million-lesson-in-point-of-sale-security (last accessed: June 6, 2016).

willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

58.  To paraphrase the words of Judge Posner in *Redman v. RadioShack Corp.*, Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at *2.

59.  A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

## CLASS ACTION ALLEGATIONS

60.  This action is also brought as a Class Action under Fed. R. Civ. P. 23.  Plaintiffs propose the following class, defined as follows, subject to modification by the Court as required:

> ***(i) All persons in the U.S. (ii) whose EMV debit or credit card, according to Defendant's records, was used to make a purchase at a Subway restaurant that (iii) according to Defendant's records, was using a version of Subway Payment Manager that was programmed to print EMV card expiration dates on customer transaction receipts, (vi) between January 20, 2016 and August 31, 2016.[13]***

61.  Plaintiffs fall within the class definition and is a member of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

---

[13] Plaintiffs respectfully reserve the right to amend the putative class definition prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also*, *e.g.*, *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying class definition per plaintiff's suggestion).

## Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.

62. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

63. Defendant operates thousands of retail stores throughout the United States, accepts credit cards and debit cards at each and, upon information and belief, prints receipts reflective of credit card or debit card transactions. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

64. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

65. While all Class members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

66. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

    a. Whether, within the two years prior to the filing of this Complaint,

        Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which contained the full expiration date;

  b.    Whether Defendant's conduct was willful and reckless;

  c.    Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

  d.    Whether Defendant should be enjoined from engaging in such conduct in the future.

67.    As a person that patronized one of Defendant's restaurants and received a printed receipt containing the full expiration date of his debit card, Plaintiffs are asserting claims that are typical of the proposed class. Plaintiffs will fairly and adequately represent and protect the interests of the class in that Plaintiffs have no interests antagonistic to any member of the class.

68.    The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully or knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

69.    Plaintiffs and the members of the class have all suffered harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the class, along with countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will (as it has already shown) continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

70. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

71. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

72. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

73. 15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

74. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

75. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

76. On or before the date on which this complaint was filed, Plaintiffs and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

77. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

78. Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; and having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

79. By printing the expiration date of Plaintiffs' credit card number on Plaintiffs' transaction receipt, Defendant caused Plaintiffs to suffer a heightened risk of identity theft; exposed Plaintiffs' private information to those of Defendant's employees who handled the receipt and forced Plaintiffs to take action to secure or destroy the receipts.

80. As a result of Defendant's willful violations of the FCRA, Plaintiffs and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiffs and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiffs Shane Flaum and Jason Alan respectfully request that this Court enter judgment in their favor and the class, and against Defendant for:

    a. An Order granting certification of the Class;

    b. Statutory damages;

    c. Punitive damages;

    d. Injunctive relief;

    e. Attorneys' fees, litigation expenses and costs of suit; and

    f. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

**Plaintiffs demand a trial by jury on all counts.**

Dated: March 23, 2017.

Respectfully submitted,

By: /s/ Keith Keogh
Keith J. Keogh, Esq.
Florida Bar No. 0126335
Michael S. Hilicki, pro hac vice
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
mhilicki@KeoghLaw.com

Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

Bret L. Lusskin, Jr., Esq.
Florida Bar No. 28069
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Class Counsel*

Todd M. Friedman (SBN 216752)
Law Offices of Todd M. Friedman, P.C.
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com

*Counsel for Jason Alan*

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on March 23, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel of parties, if any, who are not authorized to receive electronically Notice of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.