No. 1:16-cv-61198-CMA

# In the United States District Court
# For the Southern District of Florida

—————————

SHANE FLAUM and JASON ALAN, on behalf of themselves and others similarly situated,

*Plaintiff*,

v.

DOCTOR'S ASSOCIATES, INC. n/k/a DOCTOR'S ASSOCIATES, LLC, d/b/a SUBWAY,

*Defendant.*

—————————

## CLASS COUNSEL'S MOTION FOR
## AN AWARD OF ATTORNEYS' FEES AND EXPENSES

—————————

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Keith J. Keogh, Esq.
Michael S. Hilicki, Esq.
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
mhilicki@KeoghLaw.com

*Class Counsel*
November 20, 2018

58142

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

I.      SUMMARY OF THE LITIGATION. ..................................................1

      A.     FACTA ...............................................................................1

      B.     Summary of Case Proceedings..............................................2

      C.     The Notice Informs Class Members About this Fee Request and the Basis For It. ...................................................4

II.     THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE ..............5

      A.     The Fee Amount Is Reasonable as a Percentage of the Total Settlement ......................................................6

      B.     The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I* .....................................................7

            1.     The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.............8

            2.     Class Counsel Achieved an Excellent Result for the Class. ..........11

            3.     The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.........................................................11

            4.     The Requested Fee is Consistent with Other Consumer Class Settlements. ...................................................12

            5.     This Case Required a High Level of Skill. ...................................13

      C.     The Expenses Incurred Are Reasonable and Should Be Approved. .........13

CONCLUSION........................................................................................................14

58142                  ii

# TABLE OF AUTHORITIES

## Cases

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*

    No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ....................................9

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D. Fla. 2006) ...........................11

*Atkinson v. Wal-Mart Stores, Inc.*

    2011 U.S. Dist. LEXIS 150274 (M.D. Fla. Dec. 29, 2011) ....................................................13

*Bassett v. ABM Parking Servs.*, 883 F.3d 776 (9th Cir. 2018) ......................................................8

*Boeing Co. v. Van Gemert*, 444 U.S. 472, (1980) ...................................................................5, 6

*Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018) .............7

*Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, (11th Cir. 1991)......................................5, 6, 7

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*

    655 F. Supp. 2d 1316 (S.D. Fla. 2009).................................................................................2

*Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2d Cir. 2017)................................8

*Crupar-Weinmann v. Paris Baguette, Am., Inc.*, 235 F.Supp.3d 570 (S.D.N.Y. 2017) ................8

*Dear v. Q Club Hotel, LLC*,

    2018 U.S. Dist. LEXIS 42787 (S.D. Fla. Mar. 14, 2018) .................................................13, 14

*Encarnacion v. J.W. Lee, Inc.*, 2015 U.S. Dist. LEXIS 144858 (S.D. Fla. Oct. 22, 2015).............6

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) ............................................7

*Flaum v. Buth-Na-Bodhaige, Inc.*, 15-cv-62695 (S.D. Fla.) ......................................................10

*Fullwood v. Wolfgang's Steakhouse, Inc.*

    2017 U.S. Dist. LEXIS 11711 (S.D.N.Y. Jan. 26, 2017) ..........................................................8

*Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA (S.D. Fla.)................................................6, 13

*Hanlon v. Palace Entm't Holdings, LLC*

    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012) ............................................................11

*Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009)................................1, 2

*Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) ......................10

*Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974) .............................passim

*Kamal v. J. Crew Grp., Inc.*, 2016 U.S. Dist. LEXIS 145392 (D. N.J. Oct. 20, 2016) .................8

*Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)............................11

*Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114 (2d Cir. 2017) .........................................8

*Keller v. Macon County Greyhound Park, Inc.*

    464 Fed. App'x 824 (11th Cir. Mar. 20, 2012)...........................................................................8

*Keller v. Macon County Greyhound Park, Inc.*

    2011 U.S. Dist. LEXIS 45608 (M.D. Ala. Apr. 25, 2011).......................................................8

*Kirchein v. Pet Supermarket, Inc.*, 297 F.Supp.3d 1354 (S.D. Fla. 2018)....................................10

*Legg v. Lab. Corp. of America*, 14-cv-61543-RLR (S.D. Fla.).............................................passim

*Legg v. Spirit Airlines*, 14-cv-61978-JIC (S.D. Fla.).............................................................passim

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*

    540 F.2d 102 (3d Cir. 1976) .................................................................................................11

*Lipuma v. American Express Co.*, 406 F.Supp.2d 1298 (S.D. Fla. 2005).......................................5

*Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016) .......................................8

*Mocek v. Allsaints USA Ltd.*, 220 F.Supp.3d 910 (N.D. Ill. 2016)..................................................8

*Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla.) .............................passim

*Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018)...............................passim

*Najarian v. Charlotte Russe, Inc.*, 2007 U.S. Dist. LEXIS 95606 (C.D. Cal. Aug. 16, 2007) .......8

*Noble v. Nev. Check Cab Co.*, 726 Fed. Appx. 582 (9th Cir. Mar. 9, 2018)..................................8

*Noble v. Nev. Checker Cab Corp.*, 2016 U.S. Dist. LEXIS 110799 (D. Nev. Aug. 19, 2016) .......8

*Nowe, et al. v. Essex Tech. Group, LLC*, No. 17-1-3769-53 (Cobb Cty. Ga. Jan. 12, 2018)..........9

*Palamara v. Kings Family Restaurants*

    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) .....................................................11

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334 (S.D. Fla. 2007)..................................9

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) .........................................................2

*Seghroughni v. Advantus Rest., Inc.*

    2015 U.S. Dist. LEXIS 64602 (M.D. Fla. May 13, 2015) .....................................................6

*Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, (D. Colo. 2007) ..............................................12

*Stelmachers v. Verifone Sys.*, 2016 U.S. Dist. LEXIS 162081 (N.D. Cal. Nov. 21, 2016) ...........8

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993)....................................................11

*Thompson v. Rally House of Kansas City*

    2016 U.S. Dist. LEXIS 146146 (W.D. Mo. Oct. 6, 2016) .....................................................8

*Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) .......11

*Varoz v. AllSaints USA Ltd.*, No. 37-2016-00032584 (San Diego Cty. Cal. July 20, 2017)..........9

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999) ....................................6, 7

*Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012)............ 6, 13, 14

*Wood v. J. Choo USA, Inc.*, 15-cv-81487-BB (S.D. Fla.) ............................................. 1, 6, 13, 14

*Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, (11th Cir. 1983)...............................................12

## Statutes

15 U.S.C. §1681n(a)...............................................................................................................2

## Other Authorities

39 Weekly Comp. Pres. Doc. 1746 (Dec. 4, 2003).......................................................................2

S. Rep. No. 108-166, Section 113 (Oct. 17, 2003) .....................................................................2

## INTRODUCTION

Plaintiffs, Shane Flaum and Jason Alan, individually and as representatives of the Class, submit this motion and memorandum in support of the proposed attorneys' fee and expense award that is part of the class action settlement reached with Defendant, Doctor's Associates ("DAI"). A true and correct copy of the Settlement Agreement and Release is attached as *Appendix 1*. [ECF No. 82-1].[1]

As provided in the notice to the Class and consistent with Eleventh Circuit law, which determines fee awards from a common fund on a percentage-of-the-fund basis, the Settlement permits Class Counsel to request a fee award equal to "one-third of the Settlement Fund," plus the expenses they incurred. [ECF No. 82, p.8, ¶F]. The fee sought is well deserved here as the Settlement is by far the largest all-cash settlement in the history of the Fair and Accurate Credit Transaction Act ("FACTA") and establishes a substantial benefit for the class.[2] Specifically, DAI shall pay Thirty Million, Nine-Hundred Thousand Dollars ($30,900,000.00) into a common fund, and not a penny will revert back to DAI. [*See* ECF No. 82-1, p.12, §II.U]. Accordingly, Class Counsel hereby move for a fee award of $10,300,000, plus $29,884.57 in expenses.

## I.   SUMMARY OF THE LITIGATION.

### A.   FACTA

FACTA "is aimed at protecting consumers from identity theft." *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1208 (11th Cir. 2018), quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined that the inclusion of excess credit and debit card account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v.*

---

[1] Because the Settlement Agreement [ECF 82-1] is a large document with multiple exhibits, for the Court's ease of reference all pinpoint citations to it are made to the ECF page numbers stamped at the top of the document.

[2] Class Counsel believe the next largest all-cash FACTA settlements that have been granted final approval are $11,000,000, $7,500,000, $6,300,000, and $2,500,000, respectively. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, ECF No. 218, p.7 and ECF No. 227 (S.D. Fla. Feb. 18, 2016) ("*Lab*"); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF No. 146, p.9 and ECF No. 151 (S.D. Fla. Aug. 2, 2016) ("*Spirit*"); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, ECF No. 99, p.4 (S.D. Fla. Sept. 28, 2016) ("*Muransky*"), *aff'd* 905 F.3d 1200 (11th Cir. Oct. 3, 2018) (petition for rehearing pending); and *Wood v. J. Choo USA, Inc.*, 15-cv-81487-BB, ECF No. 97, pp.8-9 (S.D. Fla. May 9, 2017) ("*Choo*"). All of these settlements were granted final approval, and are outstanding results.

*Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information…"). In signing FACTA into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), citing 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

To help address this problem, Congress decided to require the truncation of credit and debit card account numbers and their expiration dates on electronically printed receipts, to limit access to this data and thereby "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, Section 113 (Oct. 17, 2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Furthermore, to encourage people to enforce their FACTA rights, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, which entitles a successful plaintiff to statutory damages for any "willful" violation of the law. *See Muransky*, 905 F.3d at 1205, citing 15 U.S.C. §1681n(a); *see also Harris,* 564 F.3d at 1306. Consistent with this intent, Plaintiff Flaum brought this action alleging certain DAI retail stores printed transaction receipts that revealed the expiration dates of purchasers' debit and credit card account numbers, in violation of FACTA. [ECF No. 1].[3] DAI vigorously denied these allegations.

### B.  Summary of Case Proceedings.

On July 12, 2016, DAI filed a motion to dismiss the complaint for lack of Article III standing under *Spokeo*. [ECF No. 15]. The parties fully briefed that motion and, on August 29, 2016, the Court denied it. [ECF No. 27].

DAI filed its answer and affirmative defenses [ECF No. 30], but also sought leave to take an interlocutory appeal of the Court's denial of its motion to dismiss. [ECF No. 31]. The parties fully briefed that motion as well and, on October 27, 2016, the Court denied it. [ECF No. 40]. The Court subsequently denied DAI's motion to reconsider the October 27th decision. [ECF No. 43].

---

[3] Pursuant to Local Rule 3.8, Doctor's Associates filed a notice of related case disclosing Plaintiff Alan on November 15, 2016. [ECF No. 44]. The settlement resolves that case as well, and an amended complaint was filed here that includes both plaintiffs at the same time the other complaint was dismissed. [ECF No. 84].

Discovery ensued, with the parties' exchanging substantial interrogatories, requests for production, and requests for admission. This discovery took place over a period of months, with DAI's production including details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue.

Among other things, the responses demonstrated that the alleged FACTA violations at issue occurred over a short time frame (nearly all of the affected receipts were printed in May or June 2016), that only about half of DAI's U.S. Subway restaurants were affected and then only as to transactions in which the debit and credit card had an EMV chip embedded in the card, that DAI immediately corrected the issue that caused the alleged violations to occur (thanks to this lawsuit), and that DAI's records did not identify the class members.

Substantial deposition discovery followed. This included the deposition of Plaintiff, plus the depositions of several DAI corporate witnesses, and three experts (Plaintiff had engaged one expert, and DAI had engaged two). The written, document, and deposition discovery was critical to understanding the value of the case and the chances of success on the merits because the FACTA claims at issue require Plaintiff and the class to prove that DAI "willfully" violated the law.

The parties also conducted extensive settlement discussions, with Class Counsel serving DAI with a detailed mediation memorandum, conducting an in-person mediation with DAI before a private, third-party mediator, Mark Buckstein of Professional Dispute Resolutions, Inc. in Boca Raton Florida on November 16, 2016, and holding follow up meetings with DAI and the mediator via teleconference on November 22, 2016 and December 1, 2016. [ECF No. 49]. Although productive, these efforts did not result in settlement.

The litigation continued through the close of discovery, with both sides filing *Daubert* motions, and Plaintiff Flaum moving for class certification. [ECF Nos. 61, 70, 77]. Neither party moved for summary judgment before the deadline to do so and the parties were prepared to go to trial. Thereafter, the parties attended a second in-person mediation with Mr. Buckstein on February 2, 2017. [ECF No. 78, ¶1]. At this mediation, the parties reached an agreement in principle for a class settlement. [*Id.*, ¶1-¶2]. Even after achieving that milestone, however, Class Counsel had to spend approximately seven weeks actively negotiating the formal settlement agreement with DAI, which was then filed, along with a detailed preliminary approval motion, on March 21, 2017. [ECF No. 82].

58142                                    3

The Court granted the motion for preliminary approval, and directed that notice be sent to the Class. [ECF No. 83]. However, DAI only had transaction information for the class members, *i.e.*, no name or contact information, and the credit and debit card account number information DAI had for the transactions was incomplete (it only recorded the first six and last four digits of each card number). Rather than just provide notice by publication and rush notice, Class Counsel sought extra time to obtain class name and address information so the class members could be given direct notice. This resulted in a year-long campaign to identify and locate the class members associated with the several million unique first-six, last-four digit combinations within DAI's transaction data. [*See* ECF No. 140, ¶3]. This effort required a two-step process to first subpoena the merchant card processers to identify the banks that issued the credit and debit cards used in the transactions, and then subpoena more than a hundred banks. [*See id.*, and ECF No. 87, ¶6-¶7]. Moreover, actually obtaining the class information required extensive analysis, communications, and negotiations with the subpoenaed entities, many of whom initially resisted complying or professed to have difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and obtain additional time and other relief to accommodate the subpoenaed parties. [*See* ECF Nos. 87, 89, 91, 93, 95, 97, 99, 101, 103, 105, 107, 109, 111, 114, 115, 119, 121, 127, 130, 136, 138].

Following Class Counsel's successful campaign to identify and locate class members, the parties suggested the Court stay this matter before notice was sent in light of the Eleventh Circuit's impending resolution of *Muransky v. Godiva Chocolatier, Inc.*, a case in which the parties reached a class action settlement in a FACTA case, but an objector claimed the settlement should be rejected and the case dismissed because allegedly FACTA claims could not confer Article III standing. [*See* ECF No. 140, 143]. The Eleventh Circuit disagreed, found the plaintiff had standing on several grounds, and affirmed the approval of the settlement. [ECF No. 150]. Accordingly, this Court lifted the stay, and directed notice of the settlement be sent to the Class by November 20, 2018. [ECF No. 157].

### C.  The Notice Informs Class Members About this Fee Request and the Basis For It.

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advises class members of the proposed attorneys' fee and expense award as both a percentage and the exact dollar amount sought. Specifically, the notice expressly told class members in multiple sections that Class Counsel would ask the Court to award "one third of the $30,900,000.00 Settlement

Fund, which is $10,300,000.00, to them for attorneys' fees …" [ECF No. 82-1, p.65 ("**7. How will Class Counsel be paid?**"); *see also id.*, p.66 ("**8. What does the settlement provide?**") (describing what the settlement fund will cover, including a fee award up to $10,300,000 and reasonable expenses). The notice also directed class members to a settlement website that repeats this information and provides Class Counsel's toll-free telephone number for questions. [*See id.,* p.20, ¶2 ("Settlement Website"); and *see* www.DAI-FACTASettlement.com]. Once filed, this motion will also be posted to the Settlement Website.

Neither the U.S. Attorney General nor any state attorney general objected to the proposed fee award despite having been sent the required CAFA notice of the Settlement and its terms on March 31, 2017. In short, there is currently no opposition to the proposed award. Plaintiffs will update the Court if there are any objections (as the Class has until January 22, 2019 to object), and accordingly respond to them. Yet whether it is zero or a small number, a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co*., 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005). As further explained below, the proposed fee and expense award should be granted.

## II.    THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE

In the Eleventh Circuit, "[i]t is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."  *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1358 (S.D. Fla. 2011) (awarding about $123,000,000.00 in fees in a common fund settlement), citing *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Muransky*, 905 F.3d at 1217.

It is worth noting that there is no "clear sailing" agreement in this settlement relating to attorney fees. Instead, after the parties agreed to the class relief, they only agreed that Class Counsel would "petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund plus reasonable expenses…" [*See* ECF No. 82, p.8, ¶F].

Here, the reasonableness of the fee award is confirmed by examining it as a percentage of the settlement, as well as under the various factors established for evaluating fee requests in the Eleventh Circuit (the *Johnson/Camden I* factors). *See Muransky*, 905 F.3d at 1206, 1217 (affirming a third of the common fund as the fee award in a FACTA class action).

### A.       The Fee Amount Is Reasonable as a Percentage of the Total Settlement

As explained in the class notice, the Settlement provides for payment of Class Counsel's fee award from the settlement fund on a percentage-of-the-fund basis. This is an appropriate basis for determining the award because, in this circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Muransky*, 905 F.3d at 1217, quoting *Camden I*, 946 F.2d at 774; *see also Encarnacion v. J.W. Lee, Inc.*, 2015 U.S. Dist. LEXIS 144858 at *14 (S.D. Fla. Oct. 22, 2015) ("using the 'percentage of recovery' method [to determine the attorneys' fee award] … is consistent with the dictates of the Eleventh Circuit."), citing *Camden I*, 946 F.2d at 771 (bracketed text added).

In addition, the requested fee of one-third of the fund easily falls within the range of reasonableness, which can be as high as 50% in this circuit. *See Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable…"); *see also e.g. Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir.1999) (affirmed fee award of 33 1/3% of a $40 million settlement); and *see Camden I*, 946 F.2d at 774-775 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.").

Indeed, a one-third percentage award was approved in multiple recent FACTA cases in this circuit, including one approved by this Court. *See Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA, ECF No. 79, pp.7-8, ¶g.-¶j., and ¶14 (S.D. Fla. Oct. 27, 2017); *Lab*, 14-cv-61543-RLR, ECF No. 218, p.26, and ECF No. 227, pp.5-7, ¶13 (S.D. Fla. Feb. 18, 2016); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14 and ¶15 (S.D. Fla. Aug. 2, 2016); *Choo*, 15-cv-81487-BB, ECF No. 97, p.7, ¶g. and ¶23 (S.D. Fla. May 9, 2017); *Muransky*, 15-cv-60716-WPD, ECF No. 99, ¶12.j and ¶14 (S.D. Fla. Sept. 28, 2016), *aff'd Muransky*, 905 F.3d at 1206, 1217. And most recently, in *Muransky*, the Eleventh Circuit affirmed a one-third percentage fee award and overruled objections to it in a FACTA case. *Id.* at 1218 ("the District Court did not abuse its discretion…").

The reasonableness of a one-third percentage award is further demonstrated by the non-monetary benefits this case confers upon the class. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-1244 (11th Cir. 2011) (fee and cost award reasonable in part because "the $1.5

million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class…"). Specifically, in direct response to these lawsuits, DAI reprogrammed its software nationwide to stop printing the expiration dates of its customers' credit and debit card account numbers on transaction receipts. Plaintiffs do not seek additional fees reflecting the value of this significant benefit to the Class, but instead simply note it as another factor to support reasonableness of the proposed award.

Finally, the percentage sought is appropriate when compared to large common fund settlements generally. *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million); *see also Waters*, 190 F.3d at 1295-96 (Eleventh Circuit affirmed a 33.33% fee award ($13.33 million) in a $40 million settlement that, unlike here, required unclaimed funds to be paid back to the defendant).

In short, Plaintiff's fee request as a percentage is reasonable, especially in light of the fact that Plaintiff is not also seeking a percentage of the value nonmonetary relief, even though the Eleventh Circuit would allow it.

### B. The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I*

In cases in which the fees sought exceed 25% of the fund, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of the award. *See Muransky*, 905 F.3d at 1217; *see also Camden I*, 946 F.2d at 775. The *Johnson*/*Camden I* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) time limitations imposed by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of the proposed fee award here.

1. **The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.**

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are interrelated and support the proposed award.

This case is novel and difficult on several levels. First, it is an open issue as to what evidence it takes to prove that DAI "willfully" violated FACTA. Moreover, the failure to prove willfulness spelled doom for the plaintiff in a number of FACTA cases. *See Keller v. Macon County Greyhound Park, Inc.,* 2011 U.S. Dist. LEXIS 45608 at *13-15 (M.D. Ala. Apr. 25, 2011), *aff'd,* 464 Fed. App'x 824 (11th Cir. Mar. 20, 2012) (summary judgment for merchant even though its system printed receipts violating FACTA because violation caused by vendor who fixed the software after system crash); *Najarian v. Charlotte Russe, Inc.,* 2007 U.S. Dist. LEXIS 95606 at *6 (C.D. Cal. Aug. 16, 2007) ("while the evidence may, at best, show that Defendant was careless in failing to ensure that the correct POS modification was implemented, it fails to show that Defendant knew about FACTA's expiration provision and consciously chose to ignore it."). Although Class Counsel are confident they can succeed here, they are not aware of any case in which a plaintiff proved willfulness in a FACTA case.

Second, although Plaintiff Flaum defeated DAI's motion to dismiss under *Spokeo* [ECF No. 27], at the time the parties filed this settlement courts had granted such motions in numerous FACTA cases. *See, e.g., Meyers v. Nicolet Rest. of De Pere, LLC,* 843 F.3d 724 (7th Cir. 2016); *Crupar-Weinmann v. Paris Baguette, Am., Inc.,* 235 F.Supp.3d 570 (S.D.N.Y. 2017); *Fullwood v. Wolfgang's Steakhouse, Inc.,* 2017 U.S. Dist. LEXIS 11711 (S.D.N.Y. Jan. 26, 2017); *Mocek v. Allsaints USA Ltd.,* 220 F.Supp.3d 910 (N.D. Ill. 2016); *Stelmachers v. Verifone Sys.,* 2016 U.S. Dist. LEXIS 162081 (N.D. Cal. Nov. 21, 2016); *Kamal v. J. Crew Grp., Inc.,* 2016 U.S. Dist. LEXIS 145392 (D. N.J. Oct. 20, 2016); *Thompson v. Rally House of Kansas City,* 2016 U.S. Dist. LEXIS 146146 (W.D. Mo. Oct. 6, 2016); *Noble v. Nev. Checker Cab Corp.,* 2016 U.S. Dist. LEXIS 110799 (D. Nev. Aug. 19, 2016). Indeed, numerous courts continued to find no standing in FACTA cases, including several appellate decisions. *See, e.g., Noble v. Nev. Check Cab Co.,* 726 Fed. Appx. 582 (9th Cir. Mar. 9, 2018); *Bassett v. ABM Parking Servs.,* 883 F.3d 776 (9th Cir. 2018); *Katz v. Donna Karan Co. Store, L.L.C.,* 872 F.3d 114 (2d Cir. 2017); *Crupar-Weinmann v. Paris Baguette Am., Inc.,* 861 F.3d 76 (2d Cir. 2017). And this issue is not

avoided by filing in state court, as state courts have reached inconsistent outcomes on it. *Compare Varoz v. AllSaints USA Ltd.*, No. 37-2016-00032584 (San Diego Cty. Cal. July 20, 2017) (finding standing to sue in FACTA case) and *Nowe, et al. v. Essex Tech. Group, LLC*, No. 17-1-3769-53 (Cobb Cty. Ga. Jan. 12, 2018) (dismissing FACTA case for lack of standing).

Third, even after the settlement was reached, Class Counsel faced the daunting task of identifying and locating several million class members with nothing but DAI's transaction information and incomplete credit/debit card account number information to go on. This involved more than a hundred subpoenas, took substantial effort and skill to successfully complete, and for all intents and purposes "was tantamount to a second litigation." *Muransky v. Godiva Chocolatier, Inc.*, 2016 U.S. Dist. LEXIS 126810 at *6 (S.D. Fla. Sept. 16, 2016).

And assuming Plaintiff prevailed and proved a "willful" violation, and successfully certified a class, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards— even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")

In addition to these myriad challenges, the ability to recover fees and expenses here has always been contingent on a successful outcome. Class Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1335 (S.D. Fla. 2001). The risk was enhanced here by the fact that Class Counsel were up against a well-heeled defendant with sophisticated class action defense counsel, and the difficulty of proving willfulness. Accordingly, "[c]ases recognize that attorneys' risk is ''perhaps the foremost' factor' in determining an appropriate fee award." *Pinto,* 513 F.Supp.2d at 1339 (collecting cases).

58142                                            9

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. Like this case, prior FACTA class actions required substantial litigation activity to achieve significant settlements. *See Legg v. Lab. Corp. of America*, 14-cv-61543, ECF No. 218, pp.11-12 (S.D. Fla. Feb. 1, 2016) (approximately 20 depositions, including four experts, two mediations and no settlement until after hearing on summary judgment, class certification, and dueling *Daubert* motions); *Legg v. Spirit Airlines*, 14-cv-61978, ECF No. 146, pp.12-13 (S.D. Fla.  July 11, 2016) (175,000 pages of documents, depositions (including one out of country), and class certification granted over the defendant's objection). Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of time and out-of-pocket expenses and risk getting nothing, especially given a track record for losing on summary judgment, the inherent possibility of failing to certify the class, the risk of losing on summary judgment or at trial, the risk of losing any victory on appeal, and the fact that most prior class settlements under FACTA (at the time this case was filed) provided little incentive to take these cases.

Finally, although Class Counsel achieved a record-breaking result, that was anything but certain when they took the case, as evidenced by the varying opinions on FACTA as to both willfulness and standing, and even at the time it was settled. Further, Class Counsel has had success in some FACTA class actions, but stood to recover zero in others. *See, e.g.*, *Flaum v. Buth-Na-Bodhaige, Inc.*, 15-cv-62695, ECF No. 67 (S.D. Fla.) (although it was the first-filed case, the class claims were settled in a later-filed, competing class action); *Kirchein v. Pet Supermarket, Inc.*, 297 F.Supp.3d 1354, 1355-56 (S.D. Fla. 2018) (defendant successfully moved to dismiss case for lack of standing *after* agreeing to settlement in FACTA case and after settlement granted preliminary approval).[4] There is certainly no guarantee of success at the class certification stage, on the merits if the case is litigated, or on any appeal that may follow. Accordingly, this factor also weighs in favor of approving the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the

---

[4] Class actions are inherently risky. For example in another recent case Class Counsel is involved in, the class was decertified two years after certification and after notice had been sent to the Class, which resulted in Class Counsel incurring hundreds of thousands of dollars in notice costs, plus the additional cost to send notice of the decertification. *See Appendix 2* (Declaration of Keith J. Keogh) at ¶14, citing *Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) (order decertifying class after notice).

58142                                  10

standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight."), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 2.   Class Counsel Achieved an Excellent Result for the Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation "with particular emphasis on the 'monetary results achieved' in the case" by class counsel. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("In common fund cases … the monetary amount of the victory is often the true measure of success…").

Here, the parties' mediated agreement provides a Settlement Fund of $30,900,000, by far the largest all cash FACTA settlement in history, and many orders of magnitude greater than the recoveries obtained in typical FACTA settlements.[5] While most FACTA settlements involve coupons or gift cards (*see* fn. 7 above), this settlement provides cash, and not a penny will revert to defendant. Accordingly, this factor weighs strongly in favor of the proposed fee award.

### 3.   The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against a well-heeled defendant and sophisticated defense counsel. The work needed included counsel's pre-suit investigation, preparing the complaint, defeating DAI's motion to dismiss and subsequent motion for interlocutory appeal, conducting significant written and document discovery, engaging and presenting an expert, deposing multiple DAI corporate representatives and multiple DAI experts, engaging in *Daubert* motion practice, moving for class certification, preparing for

---

[5] *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class members received a choice between $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class members received admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class members received a $15 credit on their next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement providing vouchers worth up to $4.78 to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future).

and attending two full-day mediations (including the detailed mediation memorandum required by L.R. 16.2(d)(1)(C)), conducting additional extensive negotiations beyond the mediation to reach the actual settlement, securing preliminary approval of the settlement, and executing a campaign involving a hundred subpoenas, extensive communications, and numerous motions as part of a year-long "second litigation" to identify and locate the class members. All of this work diverted substantial time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) (the expenditure of time "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.") (rec. of special master); *see also Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, this record settlement reflects Class Counsel's experience in handling large FACTA cases. Class Counsel knew the work that achieving a comparable outcome would take based on their success in the *Lab* and *Spirit* cases referenced above, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chance of achieving it. This experience enabled Class Counsel to convince DAI not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides). Even then, the case did not settle until after the close of discovery, and after Plaintiff filed his motion for class certification.

Furthermore, in *Muransky*, the Eleventh Circuit did not accept the objectors' argument that the case settled too quickly to justify a one-third percentage award, *i.e.*, the objector thought counsel did not expend "enough" effort. In any event, unlike *Muransky*, which settled early in the case, this case did not settle until after the close of discovery, and after class certification was pending, and thus the only work left was trial. The above factors also support the proposed award.

### 4. The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases, also support approval. Plenty of consumer class actions – again, including many FACTA cases in this District (and one before this Court) – granted one-third percentage-of-the-fund awards. *See Guarisma*, 15-cv-24326-CMA, ECF No. 79, pp.7-8, ¶g.-¶j., and ¶14 (FACTA case);

*Lab*, 14-cv-61543-RLR, ECF No. 227, ¶13 (S.D. Fla. Feb. 18, 2016) (same); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14 and ¶15 (S.D. Fla. Aug. 2, 2016) (same); *Choo*, 15-cv-81487-BB, ECF No. 97, p.7, ¶g. and ¶23 (S.D. Fla. May 9, 2017) (same); *Muransky*, 15-cv-60716-WPD, ECF No. 99, ¶12.j. and ¶14 (S.D. Fla. Sept. 28, 2016) (same), *aff'd Muransky*, 905 F.3d at 1206, 1217; and *e.g.*, *Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 at *19 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of the common fund); *Wolff*, 2012 U.S. Dist. LEXIS 153786 at *13 ("One-third of the recovery is considered standard…"); *Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 at *11 (S.D. Fla. Mar. 14, 2018) ("A review of the case law reveals that a 33.3% fee award is a consistent award in class action common fund cases."). And the non-FACTA cases were more desirable than this case because the plaintiff did not have to prove willfulness. Accordingly, this factor also favors the proposed fee award.

### 5. This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factor – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As shown, Class Counsel achieved a record settlement that confers substantial monetary and non-monetary benefits on class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F.Supp.2d at 1334 ("in assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel were able to steer this case to outcome greater than any other FACTA settlement ever achieved, while avoiding exposing the Class's recovery to the risks (such as contested class certification and summary judgment proceedings) faced in prior cases. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 2* (Keogh Decl.) at ¶2-¶3, ¶6, ¶15-¶18, ¶24-¶25; *Appendix 3* (Owens Decl.) at ¶18-¶28; *Appendix 4* (Lusskin Decl.) at ¶11. Thus, the *Johnson/Camden I* factors confirm the proposed attorneys' fee award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

### C.    The Expenses Incurred Are Reasonable and Should Be Approved.

The settlement also permits Class Counsel to seek recovery of expenses incurred on behalf of the Class. [ECF No. 82-1 at p.17]. This figure totals $29,884.57, largely consisting of

expenses related to mediation, experts, depositions, and the year-long subpoena campaign. *See Appendix 2* (Keogh Decl.) at ¶12; *Appendix 3* (Owens Decl.) at ¶31; and *Appendix 4* (Lusskin Decl.) at ¶17. None are for overhead-type items such as photocopying, research, telephone, meals, etc. Thus, counsel's expenses also should be approved. *See, e.g., Lab.*, 14-cv-61543-RLR, ECF No. 227 at pp.6-7 (S.D. Fla. Feb. 18, 2016) (granting 1/3 percentage fee award, plus expenses); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14(g) and ¶15 (S.D. Fla. Aug. 2, 2016) (same); *Choo*, 15-cv-81487-BB, ECF No. 97, ¶23 (S.D. Fla. May 9, 2017) (same); *Muransky*, 15-cv-60716-WPD, ECF No. 99, ¶13-¶14 (S.D. Fla. Sept. 28, 2016) (same); *Wolff*, 2012 U.S. Dist. LEXIS 153786 at *19 (awarding fees plus $112,157 in expenses); and *Dear*, 2018 U.S. Dist. LEXIS 42787 at *11 (awarding fees plus $304,684 in expenses).

## CONCLUSION

Class Counsel's proposed fee award is a reasonable percentage of the Settlement Fund under Eleventh Circuit law, and satisfies the *Johnson/Camden I* factors. Accordingly, Class Counsel should be awarded $10,300,000 in fees, plus $29,884.57 in expenses as provided by the Settlement.

Dated: November 20, 2018.

Respectfully Submitted

*s/ Keith J. Keogh*
Keith J. Keogh
Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Illinois 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com

Scott D. Owens, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

58142                              15

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that November 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this November 20, 2018, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*s/ Keith J. Keogh*</u>

58142                                                     16