No. 1:16-cv-61198-CMA

# In the United States District Court
# For the Southern District of Florida

———————

SHANE FLAUM and JASON ALAN, on behalf of themselves and others similarly situated,

*Plaintiff*,

v.

DOCTOR'S ASSOCIATES, INC., n/k/a DOCTOR'S ASSOCIATES, LLC, d/b/a SUBWAY,

*Defendant.*

———————

## MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

———————

Scott D. Owens (FBN 597651)
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret L. Lusskin (FBN 28069)
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Keith J. Keogh (FBN 126335)
Michael S. Hilicki (*pro hac vice*)
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
mhilicki@KeoghLaw.com

*Class Counsel*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.      SUMMARY OF THE LITIGATION, MEDIATION, SETTLEMENT & NOTICE .........2

II.     THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT. ....................................4

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................6

        A.      The Agreement Is the Result of Arm's Length Negotiations. ...............................7

        B.      The Settlement Meets Each of the *Bennett* Factors. .............................................7

                1.      Likelihood of Success at Trial. ................................................................7

                2.      Range of Possible Recovery and the Point at which the Agreement
                        Is Fair, Reasonable, and Adequate ...........................................................9

                3.      The Complexity and Expense of Further Litigation ................................9

                4.      Stage of Proceedings at which Settlement Achieved ..............................10

                5.      Substance and Amount of Opposition to Agreement ..............................11

IV.     THE FEW OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED. ........11

        A.      Joseph LeBourgeois's and Ed Maybury's Objections Are Directed at the
                Lawsuit, Not the Settlement ..................................................................................11

        B.      *Pro Se* Attorney Ken Gilman Does Not Raise Any Valid Objection. ....................13

                1.      The Settlement Is Procedurally Sound and Complies with Due
                        Process. ……………... ..........................................................................14

                2.      Mr. Gilman Does Not Have Standing to Object to the Relief or
                        Fees    ……………. ................................................................................15

                        a.      The Settlement Provides Ample Relief. ........................................15

                        b.      The Proposed Fee Is Fully Consistent with Eleventh Circuit
                                Law ……………….. .....................................................................16

        C.      The Non-Class Member Objections Are Irrelevant, Moot, and Groundless ..........17

V.      THE PROPOSED INCENTIVE AWARDS ARE PROPER. ...........................................19

VI.     CY PRES RECIPIENT AND THIRD PARTY EXPENSE REQUESTS. ........................20

CONCLUSION ....................................................................................................................20

66356

# TABLE OF AUTHORITIES

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ......................................8

*Allapattah Servs., Inc. v. Exxon Corp.*
No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ....................................11

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ............17

*Barnes v. FleetBoston Fin. Corp.*
No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) .........................13

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, (S.D. Fla. 1988) .........................................10

*Bennett v. Behring Corp.*, 737 F.2d 982, (11th Cir. 1984) ......................................................passim

*Cabot E. Broward 2 LLC v. Cabot*
2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018) ..................................................16, 19

*Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).........................................16, 18

*Cooper v. NelNet, Inc.*, 14-cv-314 (M.D. Fla. Aug. 4, 2015).......................................................19

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316 (S.D. Fla. 2009)........2

*Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D. Va. 2011) ............................12

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)......................5, 15, 17

*Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015).................8

*Greco v. Ginn. Dev. Co., LLC*, 635 Fed. Appx. 628 (11th Cir. 2015)...................................13, 14

*Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA, (S.D. Fla. Oct. 27, 2017) ............................16

*Hamilton v. SunTrust Mortg., Inc.*
2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 24, 2014) ....................................................18

*Hanlon v. Palace Entm't Holdings*, LLC
2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012) ........................................................9, 15

*Hill v. State St. Corp.*, 794 F.3d 227 (1st Cir. 2015)..................................................................15

*In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011)...........................6, 7

66356

*In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1317 (11th Cir. 2009) ........................................5

*In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, (N.D. Ga. 1993) ...........................6

*In re Law Office of Jonathan E. Fortman, LLC*
    No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013) .........................13

*In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002 (N.D. Ill. 2000) .........................................11

In re Mex. Money Trans. Litig., 267 F.3d 743 (7th Cir. 2001) ...................................................11

*In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993) ....................................................10

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, (11th Cir. 1992) ........................................................6

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, (N.D. Ga. 2001) ................................................7

*Jurvis v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ....................................................5

*Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014) ........................9, 15

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ...............................................................................1

*Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, (S.D. Fla. Feb. 18, 2016) .......................1, 16

*Legg v. Spirit Airlines*, 14-cv-61978-JIC, (S.D. Fla. Aug. 2, 2016) ............................. 1, 7, 16, 17

*Lipuma v. American Express Co.*, 406 F.Supp.2d 1298 (S.D. Fla. 2005) ....................................2

*Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-443 (W.D. Pa. May 22, 2008) ...........................9, 15

*Marino v. Ortiz,* 484 U.S. 301 (1988) .......................................................................................17

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S.247 (2010) ........................................................5

*Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla. Sept. 28, 2016) ...........1, 16

Muransky v. Godiva Chocolatier, Inc., 905 F.3d 1200 (11th Cir. Oct. 3, 2018)..................passim

*Newman v. Sun Capital Corp.*
    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012).............................8

*Palamara v. Kings Family Restaurants*
    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ...................................................9, 15

*Perez v. Asurion Corp.*, 501 F.Supp.2d 1360 (S.D. Fla. 2007) ...................................................1

*Perez*, 501 F. Supp. 2d at 1380 .........................................................................................7, 10

iv

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)..................................................5

*Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015).....................................18

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) ....................................2, 3

*Roberts v. Electrolux Home Prods.*
   2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) ....................................17

*Todd v. Retail Concepts Inc.*
   2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008).............................9, 15

*Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645 (2017) ..................................15

*U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008)...........................................5

*Vollmer v. Selden*
   350 F.3d 656 (7th Cir. 2003) ...............................................................................13

*Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988).......................................6

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) .....................16

*Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012)......16

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) ............1

*Wood v. J. Choo USA, Inc.*, 15-cv-81487-BB (S.D. Fla. May 9, 2017) .................1, 16

**Other Authorities**

A.Conte & H.Newberg, 4 NEWBERG ON CLASS ACTIONS 168 (4th ed. 2002) ...................13

McLaughlin on Class Actions (10th ed.)......................................................................11

Prof. Edward Brunet, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR
   FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403 (2003).....................................13

Prof. William Rubenstein, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY
   APPROACHES, 53 UCLA L.REV. 1435 (Aug. 2006) ........................................................13

S. Rep. No. 108-166 (Oct. 17, 2003) ............................................................................3

## INTRODUCTION

Plaintiffs, Shane Flaum and Jason Alan, on behalf of the Settlement Class, move for final approval of this settlement with Defendant, Doctor's Associates, Inc., n/k/a Doctor's Associates, LLC ("DAI"), which the Court preliminarily approved on March 23, 2017. [ECF No. 83]. A true and correct copy of the Settlement Agreement ("Agreement") is attached as *Appendix 1*.

The settlement involves the largest all cash non-reversionary settlement in the history the Fair and Accurate Credit Transaction Act (FACTA).[1] DAI will pay thirty million, nine hundred thousand dollars ($30,900,000.00) into a non-reversionary fund. Further, as a direct result of this lawsuit, DAI brought its credit and debit card receipts into full compliance with FACTA.

The class members were sent direct notice to submit a claim and 319,817 valid claims have been filed.[2] *See Appendix 2* (Decl. of Claims Administrator KCC) at ¶25-¶26. That is nearly 6% of the class members sent notice, a higher claim rate than in many consumer cases granted final approval.[3] Based on administration costs and proposed attorney fees and incentive awards, Class Counsel estimates each claimant will receive about $56, which is within the range stated in the notice. *Appendix 3* (Keogh Decl.) at ¶13.

Conversely, there are only 38 exclusions and only three class member objections (*Appendix 2* (KCC Decl.) at ¶27-¶28), far below the number of objections expected for a class this size.[4] Such

---

[1] Class Counsel believe the next largest all-cash FACTA settlements are $11,000,000, $7,500,000, $6,300,000, and $2,500,000, respectively. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, ECF No. 218 at 7 and ECF No. 227 (S.D. Fla. Feb. 18, 2016) ("*Lab*"); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF No. 146 at 9 and ECF No. 151 (S.D. Fla. Aug. 2, 2016) ("*Spirit*"); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, ECF No. 99 at 4 (S.D. Fla. Sept. 28, 2016) ("*Muransky*"), *aff'd* 905 F.3d 1200 (11th Cir. Oct. 3, 2018) (petition for rehearing pending); and *Wood v. J. Choo USA, Inc.*, 15-cv-81487-BB, ECF No. 97 at 8-9 (S.D. Fla. May 9, 2017) ("*Choo*"). All of these settlements are outstanding results.

[2] Of the valid claims, 4,862 were submitted after the January 22, 2019 claim deadline. On February 12, 2019 the settlement website stopped accepting online submissions to allow KCC to examine the claims to provide an accurate total for this filing. Accordingly, Plaintiffs suggest claims submitted up to that date be allowed. This will have a *de minimis* impact on the 314,955 timely class members, who will receive $56.53 if untimely claims are excluded, and $55.67 if they are not (a difference of 86 cents). But the difference will be significant for the late class members who will receive nothing if excluded.

[3] *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions …"); and, *e.g.*, *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of about 1.2 percent); *see also*, *e.g.*, *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, ECF No. 69 at pp 1, 3 (N.D. Ill) (1.97% of the class made claims).

[4] Three non-class members, each a serial objector, also filed objections (Wanda Cochran, Pam Sweeney, and Kerry Ann Sweeney). *Appendix 2* (KCC Decl.) ¶30. Each of these non-class members withdrew their objections. [ECF Nos. 166, 169, and 170]. Nevertheless, Plaintiff addresses their objections below.

an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[5] Finally, no governmental entity objected to the settlement after receiving the required CAFA notice. *Appendix 2* at ¶4. Thus, there is almost no opposition to this record settlement.

In granting preliminary approval, the Court found the settlement was within the range of reasonableness, and thus that the class should be given notice. [ECF No. 83, ¶1]. Nothing has changed to alter that finding. To the contrary, as demonstrated by the above-average claim rate and paucity of objections, the class has indicated solid support for the settlement. In addition, after preliminary approval, the Eleventh Circuit affirmed final approval of a very similar FACTA class settlement, as well one third of the fund for attorneys' fees plus expenses. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200 (11th Cir. 2018). Thus, for the reasons set forth herein as well as those in the motion for attorneys' fees and expenses, Plaintiffs respectfully request that this Court grant final approval, award Flaum $20,000 and Alan $10,000 as incentive awards; and award Class Counsel $10,300,000 for reasonable attorney fees, plus expenses of $30,837.80.[6]

## I. SUMMARY OF THE LITIGATION, MEDIATION, SETTLEMENT & NOTICE

FACTA "is aimed at protecting consumers from identity theft." *Muransky*, 905 F.3d at 1208 (citation omitted). Congress determined the inclusion of excess card account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information..."). In signing FACTA into law, President Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) (citation omitted).

To help address this problem, Congress decided to require the truncation of credit and debit card account numbers and their expiration dates on electronically printed receipts, to limit access

---

[5] For a class this size, the Court could expect hundreds of objections (extrapolating the median 3 objectors per median class size of 22,496). *See* Eisenberg & Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1546 (2004).

[6] This amount is the sum of the $29,884.57 sought in the fee petition filed in November 2018 [ECF No. 160 at 19], plus an additional $953.23 incurred since. *See Appendix 3* (Keogh Decl.) at ¶20.

to this data and thereby "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, Section 113 (Oct. 17, 2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Furthermore, to encourage people to enforce their FACTA rights, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, which entitles a successful plaintiff to statutory damages for any "willful" violation of the law. *See Muransky*, 905 F.3d at 1205, citing 15 U.S.C. §1681n(a). Consistent with this intent, Flaum brought this action alleging DAI printed transaction receipts that revealed the expiration dates of debit and credit card account numbers, in violation of FACTA. [ECF No. 1].[7] DAI vigorously denied these allegations.

On July 12, 2016, DAI filed a motion to dismiss the complaint for lack of Article III standing under *Spokeo*. [ECF No. 15]. The parties fully briefed that motion and, on August 29, 2016, the Court denied it. [ECF No. 27]. DAI then filed its answer and affirmative defenses [ECF No. 30], but also sought leave to take an interlocutory appeal of the denial of its motion to dismiss. [ECF No. 31]. The parties fully briefed that motion and it too was denied. [ECF No. 40]. The Court also denied DAI's motion to reconsider that decision. [ECF No. 43].

Full discovery ensued, with the parties exchanging substantial interrogatories, requests for production, and requests for admission. Written discovery took months, with DAI's production including details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations. Among other things, the responses demonstrated the asserted violations occurred over a short time frame (nearly all of the affected receipts were printed in May or June 2016), that only about half of DAI's U.S. Subway restaurants were affected, and then only as to transactions in which the debit and credit card had an embedded EMV chip. Discovery also revealed that as a result of this lawsuit, DAI immediately corrected the issue that caused the violations, and that DAI's records did not identify class members.

Deposition discovery followed. This included depositions of Flaum, several DAI corporate witnesses, and three experts (Plaintiff had one expert, and DAI two). The written, document, and deposition discovery was critical to understanding the case value and chance of success because

---

[7] On November 15, 2016, DAI disclosed related case *Alan v. Doctor's Associates, Inc.*, 16-62677-CIV-ZLOCH (S.D. Fla). [ECF No. 44]. Pursuant to the preliminary approval order, Mr. Alan was added as an additional class plaintiff to this case. [*See* ECF No. 83, ¶2].

the FACTA claims here require Plaintiff and the class to prove DAI "willfully" violated the law.

The parties also conducted extensive settlement discussions, with Class Counsel serving a mediation memorandum, conducting an in-person mediation with DAI before a private, third-party mediator, Mark Buckstein of Professional Dispute Resolutions, Inc., on November 16, 2016, and holding follow up telephone meetings with DAI and the mediator on November 22, 2016 and December 1, 2016. [ECF No. 49]. Although productive, these efforts did not result in settlement.

The litigation continued through the end of discovery, with both sides filing *Daubert* motions, and Plaintiff moving for class certification. [ECF Nos. 61, 70, 77]. Neither party sought summary judgment and thus, barring settlement, the only step left after class certification was trial.

Thereafter, the parties attended a second in-person mediation with Mr. Buckstein on February 2, 2017. [ECF No. 78, ¶1]. At this mediation, the parties reached an agreement in principle for a class settlement. [*Id.*, ¶2]. Even after that milestone, however, the parties spent about seven weeks actively negotiating the formal settlement agreement that was filed. [*See* ECF No. 82]. On March 23, 2017, the Court granted preliminary approval. [ECF No. 83].

Because DAI did not have class member identifying information, or even their complete credit or debit card account information, Class Counsel engaged in a year-long campaign to identify and locate the class members so that they could be given direct notice. [ECF No. 140, ¶3]. This required subpoenas to credit card processors and more than one-hundred card-issuing banks. [*See id.*, and ECF No. 87, ¶4-¶7]. It also required extensive analysis, communications, and negotiations with the subpoenaed entities, many of whom initially resisted complying or claimed to have difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate or compel compliance with the subpoenas, and obtain additional time and other relief to accommodate the subpoenaed parties. [ECF Nos. 87, 89, 91, 93, 95, 97, 99, 101, 105, 109, 111, 114, 115, 118, 121, 124, 127, 130, 134, 136, 138]. As a result of working through the numerous obstacles to identify the class, notice in the forms and pursuant to the methods approved by the Court was directly mailed to 5,597,961 class members, and supplemented by a press release and extensive publication notice on social media. *Appendix 2* (KCC Decl.) at ¶13-¶23.

## II.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 Fed. Appx. 896, 901

(11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'")

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Moreover, neither Rule 23 nor due process requires that class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

The plan approved by the Court provided exceptional notice that exceeds Rule 23 and due process requirements. This Court found:

> The Court has considered the proposed forms of notice including the Summary Notice; Full Notice for the Settlement Website; Publication Notice; Press Release (attached as Exhibits 2, 3, 4 and 8 to the Settlement Agreement); and Settlement Claim Forms (attached as Exhibits 6 and 7 to the Settlement Agreement); and finds the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

[ECF No. 83, ¶7]. The above-average claim rate proves these findings correct.

The Claims Administrator followed the plan. It sent direct notice to each class member for which a valid email or address was located. *Appendix 2* (KCC Decl.), at ¶13-¶18.[8] The direct notice summarized the claim, gave the estimated range of what each class member would receive, stated the exact amounts sought for incentive awards and for fees (in both a dollar amount and as a percentage of the fund), provided a toll-free number for questions, and directed class members to the settlement website. *Id.* at ¶14 and Ex. C. The toll-free number was staffed with multilingual personnel. *Id.* at ¶24. The website enabled class members to review the settlement agreement and exhibits, the preliminary approval order, fee petition, long form notice and FAQs, and file a claim or request that a claim form be mailed to them. *Id.* at ¶23. The site's FAQs also provided a toll-free number to reach class counsel. (www.DAI-FACTASettlement.com) ("You can also call Class Counsel with any questions at 1-866-726-1092.").[9] Finally, and although direct-mail notice alone

---

[8] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

[9] As of February 12, 2019, the website had been viewed 1,549,552 times, and the Claims Administrator's

is enough to satisfy Rule 23 and due process, the Claims Administrator also issued a press release announcing the settlement as required by the Agreement, and set up an extensive publication notice campaign on high-traffic social media sites that resulted in 11,782,466 impressions online. *Appendix 2* at ¶21. In short, the notice complies with the court-approved plan, exceeds Rule 23 and due process requirements, and fully apprised the class of all material terms and their rights.

### III.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."). With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining this, some deference should be given to the decision of the parties. *See Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001) (citation omitted). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here, as the Agreement is the result of arm's length, informed negotiations between

---

toll-free voice response unit had handled a total of 1,783 calls. *Id.* at ¶23-¶24. Class Counsel's office also handled over 1,000 calls about the settlement. *Appendix 3* (Keogh Decl.) at ¶14. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. *Appendix 2* (KCC Decl.) at ¶3.

the parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

### A.   The Agreement Is the Result of Arm's Length Negotiations.

The context in which the Agreement was reached confirms that it was the result of arm's length and informed negotiations between the parties, not collusion. To start, the Agreement only came about after: Plaintiff defeated DAI's motion to dismiss and motion for interlocutory appeal, full written and document discovery, multiple depositions, including three expert depositions, *Daubert* motions, Plaintiff's motion for class certification, and extensive negotiations and two mediations presided over by a highly-qualified, third-party mediator.[10] These extensive efforts gave Class Counsel ample information about the facts and the chance of success, and enabled them to evaluate the terms of any proposed agreement and ensured a fair compromise. *See Appendix 3* (Keogh Decl.) at ¶4-¶5; *Appendix 4* (Owens Decl.) at ¶28; and *Appendix 5* (Lusskin Decl.) at ¶15.

In particular, the fact that the parties only reached a deal after two in-person mediation sessions with an experienced neutral demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator). As such, it is clear this record settlement is the result of arms' length, informed negotiations, and thus it should be approved.

### B.   The Settlement Meets Each of the *Bennett* Factors.

In addition to being the product of arm's length negotiations, the Agreement also meets each of the Eleventh Circuit's *Bennett* factors.  It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id*. Here, each factor weighs in favor of granting final approval.

#### 1.   Likelihood of Success at Trial.

For the first *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the

---

[10] The mediator here, Mark Buckstein, also was one of the mediators who successfully brokered a settlement in the *Spirit Airlines* FACTA case (see fn. 2, above), which was granted final approval by Judge Cohn. *Legg v. Spirit Airlines, Inc.*, 2015 U.S. Dist. LEXIS 181111, *4 (S.D. Fla. Oct. 27, 2015).

66356

amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is uncertain, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, 2012 U.S. Dist. LEXIS 121843, *30 (M.D. Fla. Aug. 28, 2012).

DAI previously complied with FACTA, but became noncompliant as a result of an update to the point-of-purchase software it requires its stores to use. If the case had reached trial, the class risked the jury concluding DAI's alleged FACTA violation was merely negligent instead of willful, and thus not eligible for any statutory damages. Consistent with this possibility, Class Counsel is not aware of any plaintiff obtaining a favorable class judgment under FACTA.

Plus, Plaintiffs and the class faced considerable uncertainty about the impact of *Spokeo, Inc. v. Robins*, as reflected in this Court's decision to stay this case post-settlement awaiting the Eleventh Circuit's decision on whether *Spokeo* would deprive the courts of subject matter jurisdiction over FACTA cases seeking only statutory damages. *See Muransky*, 905 F.3d at 1218 (noting the district court's discussion of the "significant legal hurdles class counsel faced, including the possibility that the Supreme Court would hold in Spokeo that risk of identity theft could not support standing … [as well as] the difficulty of proving willfulness, and its own skepticism that the evidence would support a willfulness finding in this case.") (brackets added). And even if the class were to prevail at trial, any substantial award could be thrown out or reduced on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("the Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

Plus, there is no guarantee the Court would certify the class if certification was contested. Finally, needless to say, any favorable decision on the class issue or at trial could be appealed.

Against these myriad hurdles and uncertainties, the settlement guarantees substantial cash relief. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). Thus, when the strengths of the claims are weighed against the legal and factual obstacles the class faces, and the complexity of class action practice, there should be no doubt that this settlement is in the class's best interests. *See Appendix 3* (Keogh Decl.) at ¶18. The first *Bennett* factor weighs in favor of approving it.

### 2. Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *See In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F.Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id.*

The monetary relief secured for the class is substantial. It is by far the largest recovery for a class action alleging FACTA violations, and each class member who submitted a valid claim will receive about $56 in cash. *Appendix 3* (Keogh Decl.) at ¶13. This is a substantial portion of the amount each class member could hope to recover if the case were successfully tried because FACTA only permits $100-$1000 in statutory damages, and a jury could easily view printing card expiration dates on receipts to be a minor offense, or take the view of objectors LeBourgeois (this case is "disgusting") and Maybury ("outlandish"), discussed below, and find no liability or award only the minimum. *See Muransky*, 905 F.3d at 1205 (affirming FACTA settlement where class members would receive less than $100 as it was likely the potential maximum recovery would be $100, not $1,000, noting "Dr. Muransky acknowledged there was 'a good chance' each class member would recover the $100 minimum statutory damage award if the case went to trial. At the fairness hearing, the District Court agreed …"). This result is also plainly reasonable because the relief easily surpasses the potential per-class-member benefit conferred in many other FACTA class settlements that received final approval.[11]

### 3. The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor,

---

[11] *See, e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223, *2 (E.D.N.Y. Oct. 3, 2014) (FACTA settlement –$9.60 in cash or $15 voucher); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364, *14-15 (W.D. Pa. Jan. 3, 2012) (FACTA settlement – admission tickets to defendant's business); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126, *16 (M.D. Tenn. Aug. 22, 2008) (FACTA settlement - $15 credit on purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087, *9-10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement – vouchers worth an average of $4.38); *Long v. Joseph-Beth Grp., Inc.*, No. 07-cv-443, ECF No. 34-1 at 28 (W.D. Pa. May 22, 2008) (FACTA settlement – $5 voucher).

courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381 (citation omitted).

This factor favors approval because the expense and complexity of further litigation would be substantial and require completing the briefing of Plaintiff's class certification motion, extensive trial preparation, and appeal. *See Appendix 3* (Keogh Decl.) at ¶10. Moreover, continued litigation would delay the case's resolution, impose additional substantial expense on both sides, and consume substantial judicial resources. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

#### 4. Stage of Proceedings at which Settlement Achieved

The next *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383 (citation omitted).

The Agreement was preceded by a motion to dismiss, motion for interlocutory appeal, the completion of discovery, including written, document, and deposition discovery, expert discovery, *Daubert* motion practice, Plaintiff's class certification motion, and multiple day-long mediations before a professional neutral. All that remained was to finish class briefing and try the case. Thus, the settlement is the product of full knowledge of the facts, and ample motions and rulings.

On top of that, Class Counsel were able to bring to substantial expertise to bear on this case from their experiences in *Lab* and *Spirit* (*see* fn.1 above), cases in which Class Counsel secured the next two largest all-cash FACTA settlements after substantial litigation of the same issues this case presents. The fact that Class Counsel was able to achieve the largest all-cash FACTA settlement ever here should leave no doubt that they had sufficient information and knowledge to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation.

### 5.   Substance and Amount of Opposition to Agreement

The final *Bennett* factor is the substance and amount of opposition to the Agreement. There is almost none. Only three of the nearly 5,600,000 members sent direct notice objected (0.00000054%). By contrast, more than three-hundred thousand (including one objector) filed claims. In addition, Class Counsel received calls from over a thousand members, many of whom expressed appreciation for the settlement. *See Appendix 3* (Keogh Decl.) at ¶14. For example, one wrote:

> Congratulations on a fair settlement, and thank you for your work to keep companies honest and accountable. Please also extend my gratitude to the named plaintiffs Flaum and Allen for their services. *Id.*

These facts, combined with the above-average claim rate, show this factor weighs fully in support of final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.") (citing *Bennett*, 737 F.2d at 986); *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829, *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.") (brackets added).[12]

In sum, the Agreement meets all *Bennett* factors. For this additional reason, it is fair, reasonable, and adequate, and thus should be granted final approval.

## IV.   THE FEW OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED.

The three class members that objected to this record FACTA settlement do not identify grounds sufficient to even call its fairness into question, let alone any defect so grave as to justify denying approval. None dispute that the settlement is the product of full discovery, extensive litigation, and arm's length negotiations, and none dispute the settlement meets each *Bennet* factor as shown above. Instead, two the three complain about the lawsuit itself, not the settlement, and the third (filed by a *pro se* lawyer) just makes perfunctory, unsubstantiated complaints.

### A.   Joseph LeBourgeois's and Ed Maybury's Objections Are Directed at the Lawsuit, Not the Settlement

Messrs. LeBourgeois and Maybury do not challenge any aspect of the settlement itself. Instead, they challenge the nature and basis of lawsuit.

---

[12] *See also In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd*, 267 F.3d 743 (7th Cir. 2001); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.").

66356

Mr. LeBourgeois claims the lawsuit is "repulsive" and "disgusting" because he thinks no one should be compensated unless they suffered actual identity theft. *Appendix 6* (LeBourgeois Objection) (opining that if one suffered identity theft "*as a direct result*" of the alleged violations at issue, "*then* the victim(s) should be made whole in all respects.") (italics in original)).[13] Mr. Maybury similarly claims the relief is "outlandish" (*i.e.* too generous) "for the heinous crime of two months at selected stores of providing receipts with the expiration date of the card used in the transaction …" [ECF No. 161 at 1; *see also id.* at 2 ("I object to the basis for the class action." and "I object to the claim of actual or potential damages to myself or my fellow class members …")].

These opinions misunderstand FACTA's purpose, which is not limited to remedying identity theft. As discussed above, FACTA was also passed to protect against the *risk* of identity theft Congress found caused by exposing too much credit card account information on transaction receipts, and to deter violations by allowing statutory damages for willful violations.

Indeed, if anything, LeBourgeois's and Maybury's denigration of the case confirm the settlement's reasonableness by highlighting: (a) the risks of trial, as a jury may share their misgivings, and (b) the exceptional nature of the results achieved considering some persons think the case is "worthless." Regardless, their general disapproval and similar "philosophical" objections are inevitable in class actions, and thus "do not impugn the adequacy of the settlement itself." *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D. Va. 2011).

Finally, Mr. Maybury complains about an alleged "extensive list of actions with specific dates that I must take to make my voice heard, including providing the dates and my credit card numbers to them," but this is incorrect. As the notice explains, the only action he had to take is to put his objection in writing and mail it to the Court and the parties' counsel by January 22, 2019, which he did. *Appendix 2* (KCC Decl.) at Ex. C. Conversely, the notice does not require "dates" or card data to lodge an objection. That is only required to submit a claim by persons not sent notice (*i.e.* not on the class list). *Id.* at Ex. J. Mr. Maybury admits he was sent a notice (ECF No. 161 at 2 ("they initiated the contact with me by mail regarding this class action …"). So he did not

---

[13] Mr. LeBourgeois's objection is ironic because at the same time he pillories the lawsuit and claims only identity theft victims should recover, he filed a claim to get a cash payment even though does not claim he suffered identity theft. *Id.* at p.2 ("A copy of my Claim Form is attached.") and at p.3 (signed claim form)). His objection also is technically invalid because he did not file it with the Court, as the notice directs. *Appendix 2* (KCC Decl.) at Ex. C, p.2 ("You must file your written objection with the Court by …") and at Ex. H, p.7 ("**To be considered, you must file your objections with the Court.**") (bold in original).

need to submit any proof to make a claim, but could easily have easily done so via the toll-free phone-in claim mechanism, regular mail, or online. In short, Messrs. LeBourgeois and Maybury identify no defect in the settlement and their objections should be overruled.

**B.**    ***Pro Se* Attorney Ken Gilman Does Not Raise Any Valid Objection.**

Unlike members for whom a class action is the only practical means to obtain relief, Mr. Gilman is capable of enforcing his FACTA rights. Yet, he never did so, indicating he was either unaware of his claim, or that it was not important enough for him to bother.

This is not the first time Mr. Gilman – himself a plaintiff's class action lawyer – has lodged an objection to a class settlement. *See Greco v. Ginn. Dev. Co., LLC*, 635 Fed. Appx. 628 (11th Cir. 2015). While an objector may sometimes provide assistance to the class by identifying a genuine problem in a proposed settlement, some persons file meritless objections just to try to extract payments for themselves by threatening years of delay and expense on appeal:

> The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal).  Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost …

*Barnes v. FleetBoston Fin. Corp*., 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006); *see also Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003) (it is improper to object to "cause expensive delay in the hope of getting paid to go away."). Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.,* 2013 U.S. Dist. LEXIS 163118, *11 n.2 (S.D. Cal. Nov. 14, 2013) (quoting *In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, *3 (E.D. Mo. Feb. 1, 2013)).[14]

In assessing Mr. Gilman's objection in *Greco*, the Eleventh Circuit observed he filed a competing class action that would be affected by the settled case (presumably barring a class), and

---

[14] Objecting to class settlements "has become big business." A.Conte & H.Newberg, 4 NEWBERG ON CLASS ACTIONS §11:55, at 168 (4th ed. 2002); *see also* Prof. William Rubenstein, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES, 53 UCLA L.REV. 1435, 1459 (Aug. 2006) ("This part of the profession has arguably attracted lawyers more interested in coercing a fee than in correcting a wrong."). Thus, professional objectors have been described as "warts on the class action process" and "bottom feeders." Prof. Edward Brunet, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403, 410 (2003).

thus "[t]he district court properly considered that Greco (or his counsel) may have had an ulterior motive in objecting to the settlement, rather than opting out." *Greco*, 635 Fed. Appx. at 633.

Mr. Gilman's objection here suggests an "ulterior motive" too. Despite being a class action lawyer, he states the "grounds" for his objection in conclusory terms, cites no authority, and provides almost no reasoning. For example, he claims "[t]he Settlement does not provide sufficient monetary relief or sufficient relief to remedy and ensure Defendant's current compliance with all applicable privacy laws," but provides no justification for this broad claim or even what privacy laws he is referencing as this is not a data breach case. [ECF No. 164 at ¶3].

Moreover, his objection is based in part on a falsehood. Mr. Gilman claims the class was not given access to sufficient "transactional data" held by Class Counsel and others, and to support this assertion he further claims he "attempted to obtain the transaction data without success," implying he was ignored by the parties or claims administrator. [*See id.* at ¶1 and ¶4]. However, Class Counsel has no record of any communication from him[15] and, after Class Counsel confirmed KCC never spoke with him, they asked Mr. Gilman when and to whom he made this request. But Mr. Gilman did not respond. *See Appendix 3* (Keogh Decl.) at ¶15 and Ex. A (email to Gilman).

Finally, the stated grounds for Mr. Gilman's objection are substantively meritless. None demonstrate any defect in the settlement, let alone grounds for going against the more than three-hundred thousand class members who supported the settlement by filing claims.

### 1. The Settlement Is Procedurally Sound and Complies with Due Process.

Mr. Gilman claims the settlement is "procedurally unfair" and violates due process because allegedly it precludes a class member who files a "valid objection," but no claim for benefits, "from ever recovering any amount from" DAI, and still releases their claim. [*See* ECF No. 164 at ¶4]. This assertion is a *non sequitur* because the settlement does not affect anyone if a class member lodges a valid objection to its approval, *i.e.*, one that is sustained. By its own terms the settlement is "null and void" if not approved. *Appendix 1* at §III.A. In that case, no rights are lost.[16]

Mr. Gilman also claims the settlement is procedurally infirm because "all of the transaction data is within the exclusive possession of Plaintiff's Counsel and Defendant and Releasee [sic]," and thus class members "do not have sufficient access to the information which injured them and

---

[15] Class Counsel has records of over a thousand class members who called their offices. *Appendix 3* at ¶14.

[16] It must be noted that class members were free to file an objection *and* a claim to recover the benefits of the settlement in case it was approved, as Mr. LeBourgeois did (see fn. 13 above), and that class members who did not want to release their claim could simply opt out. In short, this objection is invalid.

66356

invaded their privacy," but need this information to evaluate the settlement. [*See* ECF No. 164 at ¶4-¶6]. This is another *non sequitur*. The claims here stem from printing card information on receipts, not the underlying transactions or data associated with them as this is not a data breach type case. Regardless, Mr. Gilman never requested the information and could have looked at his own credit card records or called his card issuer if it was a real concern. Finally, due process does not require the class be given "every fact." *See Faught*, 668 F.3d at 1239 (the class notice need not "be overly detailed"). Thus, Mr. Gilman's nebulous "transaction data" objection is invalid.

### 2. Mr. Gilman Does Not Have Standing to Object to the Relief or Fees

Mr. Gilman objects to the settlement amount and proposed attorney fee award, but he does not have standing to do so. *See Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017) (one "must demonstrate standing for each claim he seeks to press …"); *accord Muransky*, 905 F.3d at 1220 ("standing is not dispensed in gross") (Jordan, concur.). Mr. Gilman lacks standing to object to either because did not file a claim to receive any benefits. *See Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) (objector who filed no claim lacked standing to object to fees because decrease in fees would not benefit them). As such, no matter what the class receives or the Court awards for fees, Mr. Gilman will not be affected. Regardless, his objections are meritless.

#### a. The Settlement Provides Ample Relief.

Either Mr. Gilman did not recognize he had a FACTA claim when it arose in 2016 or did not care, and here he decided to forgo the opportunity to exclude himself and file his own case. Yet, now he claims this settlement does not provide enough relief, despite the fact that it is almost three times larger than the next-largest all-cash, non-reversionary FACTA class action settlement, the fact that each of the more than three-hundred thousand class members who filed a claim will receive a large portion of the relief they could hope to receive if the case were to survive contested class certification proceedings, trial and appeal, and the fact that the class faces substantial headwinds to achieving a larger recovery if they proceed as stated above.

Not only is the total relief the largest, the per class member recovery exceeds most FACTA settlements granted final approval,[17] and it is almost the same as the amount per class member provided by the settlement the Eleventh Circuit affirmed in *Muransky*. *See Muransky*, 15-cv-

---

[17] *Compare*, *e.g.*, *Katz*, 2014 U.S. Dist. LEXIS 141223, *2 ($9.60 in cash or $15 voucher); *Hanlon*, LLC, 2012 U.S. Dist. LEXIS 364, *14-15 (admission tickets to defendant's business); *Todd*, 2008 U.S. Dist. LEXIS 117126, *16 ($15 credit on purchase of $125 or more); *Palamara*, 2008 U.S. Dist. LEXIS 33087, *9 (vouchers worth an average of $4.38); and *Long*, No. 07-cv-443, ECF No. 34-1 at 28 ($5 voucher).

60716-WPD, ECF No. 74 at 16 ("approximately $60 in cash" per class member).

His related assertion that the settlement does not provide sufficient deterrent effect fails because the settlement's purpose is to compensate for past injuries, not prevent potential future injury that can be remedied by later litigation. Also, it is wrong because this case prompted DAI to *immediately* correct the problem that caused card expiration dates to be printed on receipts, and because it is self-evident the prospect of another $31 million recovery will deter future violations. Simply put, Mr. Gilman's unsubstantiated objection to the settlement amount is baseless.

### b. The Proposed Fee Is Fully Consistent with Eleventh Circuit Law.

Once again, Mr. Gilman lacks standing to object to the proposed fee award because he did not file a claim under the settlement, and thus the fee will not affect him. *See, e.g.*, *Muransky supra*.

Regardless, in making the conclusory claim that the fees should be 25% of the fund instead of one-third, Mr. Gilman presents no law, facts, or reasoning despite being a class action lawyer himself. Nor does he address, let alone refute, the law, facts, and reasoning given in support of the one-third percentage award stated in Class Counsel's fee petition, which has been on file and posted on the settlement website since November, 2018. [*See* ECF No. 160].

As the petition demonstrates, the one-third percentage sought is common, was just affirmed in *Muransky*, and is well within the range of reasonableness in this Circuit, which allows awards as high as 50%. [*Id.* at 11-12].[18] Indeed, beyond *Muransky*, this same percentage was approved in multiple FACTA cases in this district, including one by this Court. [*Id.* at 11].[19] Moreover, the Eleventh Circuit's decision to affirm a one-third percentage award in *Muransky* particularly demonstrates its reasonableness here because the total recovery in that case was much smaller and,

---

[18] *See Camden I*, 946 F.2d at 774-775 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."); and *see Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292, 1295–96 (11th Cir. 1999) (33 1/3% award from a $40 million settlement that, unlike here, required unclaimed funds to be paid back to the defendant)*; Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706, *4-5 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million).

[19] Citing *Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA, ECF No. 79, pp.7-8, ¶g.-¶j., and ¶14 (S.D. Fla. Oct. 27, 2017); *Lab*, 14-cv-61543-RLR, ECF No. 218, p.26, and ECF No. 227, pp.5-7, ¶13 (S.D. Fla. Feb. 18, 2016); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14 and ¶15 (S.D. Fla. Aug. 2, 2016); *Choo*, 15-cv-81487-BB, ECF No. 97, p.7, ¶g. and ¶23 (S.D. Fla. May 9, 2017); *Muransky*, 15-cv-60716-WPD, ECF No. 99, ¶12.j and ¶14 (S.D. Fla. Sept. 28, 2016), *aff'd* 905 F.3d at 1206, 1217.

unlike here, the settlement was reached near the case outset. *See Muransky*, 905 F.3d at 1205.

The reasonableness of a one-third percentage is also fully supported by the *Johnson/Camden* factors endorsed by the Eleventh Circuit [ECF 160 at 12-19], as well as by the nonmonetary benefits this case conferred, which include prompting DAI to immediately change its system to stop printing card expiration dates on receipts. *See Faught*, 668 F.3d at 1243-1244 (fee award proper in part because it "is designed to compensate the class counsel for the non-monetary benefits they achieved for the class…"). Mr. Gilman does not address any of the foregoing, let alone refute them. His conclusory objection to the proposed fee should be overruled.

### C.    The Non-Class Member Objections Are Irrelevant, Moot, and Groundless

Wanda Cochran, Pam Sweeney, and Kerry Ann Sweeney also filed objections, but they are not class members (*Appendix 2* at ¶30-¶32), and thus lack standing to object. [*See* ECF No. 83 at ¶12 (only a "Settlement Class Member" can object)]; and *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473-74 (S.D. Fla. 2002) ("non-class members are not permitted to assert objections to a class action settlement.") (citations omitted); *see also Marino v. Ortiz,* 484 U.S. 301, 304 (1988) ("because petitioners were not parties to the underlying lawsuit, … they may not appeal from the consent decree approving that lawsuit's settlement"). Accordingly, they withdrew their objections. [ECF Nos. 166, 169; and 170].[20] Thus, their objections are also moot.

However, for the sake of completeness, Plaintiffs address them here. Professional objector Kerry Ann Sweeney asserts the "[c]laims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised." [ECF No. 162 (K. Sweeney Objection) at 2]. This objection does not fit a non-reversionary settlement where all of the money will be paid out for the class (like here), but seems more applicable to a reversionary settlement where money may go back to the defendant. Even then it would be baseless because the Court appointed KCC (a nationally-recognized class settlement administrator) to administer the settlement, plus Class Counsel is monitoring the

---

[20] The Sweeneys (who are siblings), along with their father Patrick – who has been convicted of stealing $500,000 from his partners and presently suspended from law – are also professional objectors who commonly file shakedown objections. *See*, *e.g.*, *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, *33-35 (C.D. Cal. Sept. 11, 2014) (discussing Mr. Sweeney's "long history" of objecting to class settlements, and stating "the Court finds that the objection is lawyer-driven and appears to be brought for an improper motive, and would otherwise delay important safety benefits to the Settlement Class members."). Indeed, Kerry Ann Sweeney and her father filed a nearly identical objection in the *Spirit* FACTA case, only to later withdraw it as she was not a class member in that case either. *Spirit*, 14-cv-61978-JIC, ECF Nos. 141 (K. Sweeney Objection), and 144 (K. Sweeney Withdrawal).

17

66356

settlement. The Court already decided Class Counsel up to the task in finding them adequate to represent the class at the preliminary approval stage [ECF No. 83 at ¶6], and nothing has changed to alter that conclusion. This same process was employed in *Muransky*, which was approved.

Each non-class member also summarily objects to the proposed fee. But once again, as shown, the proposed fee award is well-supported by Eleventh Circuit law, decisions in this district in other FACTA cases (including by this Court), the outstanding results, and the *Johnson*/*Camden* factors discussed in Class Counsel's fee petition which these objectors do not address, even though the petition has been on file and available on the settlement website since November 2018.

Kerry Ann Sweeney also challenges the proposed fee based on the number of "docket entries," but the Eleventh Circuit holds the award should be based a reasonable percentage of the fund and the *Johnson*/*Camden* factors, not "docket entries." *See Muransky*, 905 F.3d at 1217 (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 774 and 775 (11th Cir. 1991)). She further claims the case was resolved in "months," that the only work Class Counsel did was "a Complaint and an Answer [sic] Motion to dismiss (never adjudicated) and a settlement," and that there were no depositions, but these claims are false and are clearly a result of recycling a prior objection filed in an unrelated case. This case was fully litigated almost to trial, with substantial motion practice and full discovery (including depositions), plus Ms. Sweeney ignores the year of post-settlement work to subpoena class member information from more than a hundred banks. Ms. Sweeney also ignores that the work performed is only one of the *Johnson*/*Camden* factors and that, as demonstrated in Class Counsel's fee petition, an analysis of all factors (including work performed, which was substantial) demonstrates the proposed award is reasonable. [ECF No. 160 at 12-17].

Finally, Ms. Sweeney claims the "[a]ttorney fees do not depend upon how much relief is actually paid to the Class Members." [ECF No. 162 at 3]. This claim is wrong as not a penny of the Settlement will revert to DAI, plus it is contrary to the rule that values the settlement based on the amount made available to the class, not the amount paid out. *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 n.2 (11th Cir. 2015) ("While no published opinion of ours extends *Camden I*'s percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so." (approving $5.68 million in fees when $344,850 went to the class)); *see also Hamilton v. SunTrust Mortg., Inc.*, 2014 U.S. Dist. LEXIS 154762, *19 (S.D. Fla. Oct. 24, 2014) ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims."). Regardless, the proposed fee reflects the total distribution of the net fund paid to

18

the class and, if there are uncashed checks that do not total enough to redistribute to the class, a *cy pres* recipient closely related to the class and approved by the Court will receive them. Accordingly, this is not a legitimate objection.

## V.      THE PROPOSED INCENTIVE AWARDS ARE PROPER

Incentive payments are commonly awarded to class representatives for their service to the class in vindicating their rights and enabling them to secure relief on their common claims, as contemplated by Federal Rule 23. *See Muransky*, 905 F.3d at 1218 ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (citations omitted).

Flaum and Alan respectively request awards of $20,000 and $10,000 from the $30,900,000.00 fund, which are well within the range of reasonableness. *See Cabot E. Broward 2 LLC*, 2018 U.S. Dist. LEXIS 192706, *23, 28 (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving incentive awards ranging from $15,000 to $1.76 million); *see also Cooper v. NelNet, Inc.*, 14-cv-314, ECF No. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 incentive award); and *Muransky*, 905 F.3d at 1219 (affirming $10,000 incentive award in FACTA case that settled months after being filed, where plaintiff was not deposed and did not have to answer written discovery).

Flaum's proposed award is justified not only for the record results achieved for the class, but also his own personal efforts responding to written discovery, being deposed, and attending both mediations. [ECF No. 83 at 8, §E]. Plaintiff Alan's award reflects his parallel efforts to bring suit to vindicate the class's rights. [*See id.* at 5]. And both Plaintiffs subjected themselves to the "inconvenience and time delays" associated with a class action, which the Eleventh Circuit noted in affirming a $10,000 incentive award in a FACTA case that, unlike here, settled only months after it was filed. *See Muransky*, 905 F.3d at 1219 ("the District Court observed that Dr. Muransky 'was subjecting himself to inconvenience and time delays that didn't materialize as much as they might have, but they still were a possibility when he signed on as the class representative.'").

Significantly, the notices expressly advised the class of the exact amounts Plaintiffs would seek. *Appendix 2* (KCC Decl.) at Ex. C (p.1); Ex. D. (p.1), Ex. H, p.1. Except for Mr. LeBourgeois's "philosophical" objection above, no class member objected to the proposed incentive awards, and the amount requested will not materially impact any class member. Thus, the proposed awards should be approved.

## VI.    CY PRES RECIPIENT AND THIRD PARTY EXPENSE REQUESTS.

In the event the any funds remain from uncashed checks and it's not feasible to redistribute, the parties jointly proposed the remaining funds be distributed to the Electronic Frontier Foundation (https://www.eff.org) as a *cy pres* recipient that promotes privacy interests on behalf the class, as stated in the motion for preliminary approval. (ECF No. 82 at 19-20).

Also, some subpoenaed banks requested compensation for producing class data, which the Agreement allows to be paid from the fund. *Appendix 1* at §II.B(g). A list containing each bank's request, claimed hours and rates, and Counsel's payment recommendation, is attached as *Appendix 7*. The banks' total request is $32,324.25. Most requests are a few hundred dollars or less. Counsel recommends payment of each in full except for American Express, U.S. Bank, Fifth/Third Bank.

Class Counsel advised these three banks that Counsel cannot recommend their full request and why,[21] what amount Counsel proposed, that Counsel would make a recommendation in this final approval motion on February 19, 2019, and that the hearing is March 8, 2019. *See Appendix 3* (Keogh Decl.) at ¶8-¶9. U.S. Bank and Fifth Third reached an agreement on Counsel's recommendation, but to date American Express has not given a substantive response. In short, the banks should receive the payment recommendations corresponding to them in *Appendix 7*.

## CONCLUSION

This record settlement provides substantial cash benefits, it is the product of full discovery, substantial litigation and arm's length negotiations with an experienced mediator, plus it satisfies each of the six *Bennett* factors. The Court's preliminary approval order already found the settlement within the range of reasonableness, nothing has changed to disturb that conclusion, and to the contrary the claim rate and paucity of objections shows the settlement is fair, reasonable and adequate. Thus, Plaintiffs request an order granting final approval, awarding Flaum $20,000 and Alan $10,000 as incentive awards, awarding Class Counsel $10,300,000 for reasonable attorneys' fees, plus $30,837.80 in expenses, and allowing the Claims Administrator to pay $18,554.77 to subpoenaed banks in accordance with *Appendix 7*, with American Express receiving $2,200, U.S. Bank receiving $5,000 and Fifth/Third receiving $2,626. A proposed final approval order, which is also being emailed to chambers, is hereby attached as *Appendix 8*.

---

[21] As the chart in *Appendix 7* shows, American Express and U.S. Bank sought $100/hr. and $50/hr., but all others charged less (the average was $25.71/hr., excluding American Express and U.S. Bank). Fifth/Third had billed 393 hours for $7,878, suggesting it conducted its record search manually instead electronically, as the next highest bank billed less than 150 hours, and most billed less than 20 hours.

Dated: February 19, 2019

Respectfully Submitted

*s/ Keith J. Keogh*
Keith J. Keogh (FBN 126335)
Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Illinois 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com

Scott D. Owens (FBN 597651)
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin, Jr. (FBN 28069)
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

CLASS COUNSEL

66356

<u>**CERTIFICATE OF SERVICE**</u>

   **I HEREBY CERTIFY** that February 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

      By: */s/ Keith J. Keogh*
        55 W. Monroe St., Ste. 3390
        Chicago, Illinois 60603
        312.374.3402 (Direct)
        312.726.1092 (Main)
        312.726.1093 (Fax)
        Keith@KeoghLaw.com

66356