UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61198-CIV-ALTONAGA/O'Sullivan

SHANE FLAUM
and JASON ALAN,
on behalf of themselves and
others similarly situated,

      Plaintiffs,
v.

DOCTOR'S ASSOCIATES, INC.,

      Defendant.
_____/

# ORDER

**THIS CAUSE** came before the Court on Plaintiffs, Shane Flaum and Jason Alan's Motion for Final Approval of Class Action Settlement [ECF No. 172], filed February 19, 2019. On June 6, 2016, Plaintiffs filed a Class Action Complaint [ECF No. 1] against Defendant, Doctor's Associates, Inc., alleging Defendant failed to truncate certain credit card information on its receipts, in violation of the Fair and Accurate Credit Transactions Act ("FACTA"). (*See generally id.*). The parties have agreed to settle the case, memorializing their settlement in a Class Action Settlement Agreement.

On March 23, 2017 the Court entered an Order [ECF No. 83] preliminarily approving the Class Action Settlement Agreement. In the Preliminary Approval Order, the Court, among other things, preliminarily certified a class of plaintiffs (the "Class Members") with respect to the claims asserted in the action and preliminarily approved the proposed Settlement Agreement. (*See generally id.*). After an extensive stay pending the outcome of the Eleventh Circuit's decision on standing principles for FACTA claimants, the Court reopened the case on November

2, 2018. (*See* Order [ECF No. 157]). On November 20, 2018, Plaintiffs filed an Unopposed Motion for an Award of Attorneys' Fees and Expenses [ECF No. 160] seeking $10,300,00.00 in attorney's fees and a sum for expenses. (*See id.* 1).

On February 19, 2019, Plaintiffs filed the present Motion for Final Approval of Class Action Settlement seeking approval of the Settlement Agreement. (*See* App'x 1, Settlement Agreement and Release [ECF No. 172-1] (the "Settlement Agreement"). On March 8, 2019, a Final Approval Hearing [ECF No. 174] was held under Federal Rule of Civil Procedure 23 to determine whether the claims in the case satisfy the prerequisites for class action treatment and whether the Settlement Agreement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court. No objectors appeared.

Again, the parties request final certification of the settlement class under Federal Rule of Civil Procedure 23(b)(3) and final approval of the proposed Settlement Agreement. The Court has carefully considered the Settlement Agreement, the present Motion, and the record. The Court agrees with the parties that the Settlement Agreement is fair, reasonable, and in the best interests of the Class Members.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs, Shane Flaum and Jason Alan's Motion for Final Approval of Class Action Settlement **[ECF No. 172] is GRANTED** as follows:

1. This Order incorporates the Settlement Agreement, including all exhibits attached to it. Unless otherwise provided, the terms in the Settlement Agreement shall have the same meanings in this Order.

2. The Court has personal jurisdiction over the Class Representatives, Settlement Class Members, and Defendant for purposes of the Settlement Agreement only, and has subject

matter jurisdiction to approve the Settlement Agreement.

3. The Settlement Class previously certified by the Court includes:

> The cardholders who hold the 2,687,021 unique credit or debit card numbers based on the first six and last four digits of their accounts, whose EMV debit or credit card was used to make a purchase by tapping or inserting the card in a payment terminal at a Subway restaurant that was using a version of Subway Payment Manager that was programmed to print EMV card expiration dates on customer transaction receipts, between January 1, 2016 and the date of preliminary approval of the Settlement.
>
> Notwithstanding the foregoing, in compliance with 28 U.S.C. section 455, the Settlement Class specifically excludes the following persons: The district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, and their spouses and minor children.

In addition, all individuals who properly opted out of the Settlement Class following the procedure described in the Agreement and the Court's Preliminary Approval Order are excluded from the Settlement Class.

4. The record shows that Class Notice has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) constitutes reasonable and the best notice that is practicable under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the terms of the Settlement Agreement, and the right of Settlement Class Members to object to or exclude themselves from the Settlement Class and appear at the Fairness Hearing held on March 8, 2019; (iii) constitutes adequate and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process and Federal Rule of Civil Procedure 23.

5. This Order shall have no force or effect on those persons who properly and timely excluded themselves from the Settlement Class.

6. The Court finds that extensive arm's-length negotiations have taken place in good faith between Class Counsel and Defendant's counsel resulting in the Settlement Agreement.

7. The Court finds that the designated Class Representatives are adequate.

8. The Court has considered all the factors enumerated in Federal Rule of Civil Procedure 23(g) and finds that Class Counsel have fairly and adequately represented the interests of the Settlement Class.

9. Under Federal Rule of Civil Procedure 23(e), the Court **FINALLY APPROVES** the Settlement Agreement and the Class Settlement and finds both fair, reasonable and adequate, and in the best interest of the Settlement Class taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class and processing their claims; (iii) the terms concerning the proposed attorney's fee award; (iv) the absence of any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(3); and (v) the settlement treats all class members equitably relative to one another. The three class member objections to the Settlement are overruled.

10. The Parties are directed to implement the Settlement Agreement. The claims against Defendant on behalf of the Settlement Class in this action are **DISMISSED with prejudice** and without costs to any party, except as otherwise provided.

11. On the effective date of the Settlement Agreement, the Settlement Class and each Settlement Class Member, released and forever discharged Defendant and its Releasees from all Released Claims.

 a. "Released Claims" means any and all claims; actions; causes of action; rights; suits; defenses; debts; sums of money; payments; obligations; promises, damages, penalties, attorney's fees; costs; liens; judgments; and demands of any kind whatsoever that each member of the Settlement Class may have or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been asserted in the Litigation and all claims that relate to or arise from printing too much information on any receipts from a Subway restaurant during the Settlement Class period, including, but not limited to, any claims under arising under the FACTA, for a violation of any consumer protection statutes, or regarding identity theft or the risk of identity theft.

 b. "Defendant's Releasees" means Defendant's Associates, each of its franchisees (including without limitation all Subway franchisees); affiliates; parents; subsidiaries; predecessor; successors; co-venturers; divisions; joint venturers; joint ventures and assigns; as well as each of those entities' past and present owners; investors; directors; officers; employees; partners; managers; members; principals; agents; underwriters; insurers; co-insurers; re-insurers; indemnitors; shareholders; attorneys; accountants and auditors; banks and investment banks; consultants; vendors; contractors; licensors; franchisors; and assigns.

  c. The Settlement Class and each Settlement Class Member agree they shall not seek to establish liability against any Defendant's Releasee based, in whole or in part, on any of the Released Claims.

  d. The Settlement Class and each Settlement Class Member expressly waive and relinquish all rights which they may have under Section 1542 of the California Civil Code or any similar statute in the United States. Section 1542 reads as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Even if the Settlement Class and each Settlement Class Member discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, each Settlement Class Member shall be deemed to have, and by operation of this Order shall have, nevertheless, fully, finally, and forever waived, settled and released any and all Released Claims, regardless of such subsequent discovery of additional or different facts.

  e. Each Class Representative and each Settlement Class Member releases and forever discharges all claims that he or she may have against any of Defendant's Releasees.

12. Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Order, nor any of its terms and provisions, shall be offered by

any person or received against Defendant or any Defendant's Releasee as evidence of — or construed as or deemed to be evidence of — any presumption, concession, or admission by Defendant or any of Defendant's Releasee of the truth of the facts alleged, the validity of any claim that has been or could have been asserted in this action or in any action or administrative proceeding, the deficiency of any defense that has been or could have been asserted in the action, or of any liability, wrongdoing, or violation of any statute or law by Defendant or any of Defendant's Releasee.

13. Class Counsel have moved under Federal Rule of Civil Procedure 23(h) for an award of attorney's fees and reimbursement of expenses. Under Federal Rules of Civil Procedure 23(h)(3) and 52(a), the Court makes the following findings of fact and conclusions of law:

   a. this Settlement Agreement confers substantial benefits on the Settlement Class Members;

   b. the value conferred on the Settlement Class is immediately and readily quantifiable upon this judgment becoming final, as defined in the Settlement Agreement, and Settlement Class Members who have submitted valid Settlement Claim Forms or Publication Notice Claim Forms will receive payments that represent a significant portion of the damages that would be available to them were they to prevail in an individual action under the FACTA;

   c. Class Counsel vigorously and effectively pursued the Settlement Class Members' claims before the Court in this complex case;

   d. this Settlement Agreement was obtained as a direct result of Class Counsel's advocacy;

e. this Settlement Agreement was reached following extensive arms'-length negotiation between Class Counsel and Defendant's Counsel, facilitated by a professional mediator, and was negotiated in good-faith and in the absence of collusion;

f. during the action, Class Counsel incurred expenses in the aggregate amount of **$30,837.80**, which included mediation and other expenses and which the Court finds to be reasonable and necessary to the representation of the Settlement Class;

g. Settlement Class Members were advised in the Class Notice approved by the Court that Class Counsel intended to apply for an award of attorney's fees and reasonable expenses in an amount up to one-third of the Settlement Fund **$10,300,000.00** to be paid from the Settlement Fund;

h. only three members of the Settlement Class have submitted written objections to the award of attorney's fees, but Mr. Gilman did not file a claim to receive any benefits from the Settlement Agreement such that he is not affected by the fee award, and Mr. LeBourgeois and Mr. Maybury object to any settlement or payment of attorney's fees;

i. attorneys who recover a common benefit for persons other than themselves or their clients are entitled to a reasonable attorney's fee from the Settlement Fund as a whole; and

j. the requested fee award is consistent with other fee awards in the Eleventh Circuit. the requested fee award is consistent with other fee awards in this Circuit.  This fee is also consistent with three recent FACTA cases in this District, one of which was recently affirmed by the Eleventh Circuit in *Muransky v. Godiva Chocolatier, Inc.*,

8

905 F.3d 1200 (11th Cir. 2018). *Muransky* affirmed attorney fees in the amount of one third of the total settlement plus expenses in a case that settled much earlier in the litigation than this one. *See id.*

k.  the requested fee award also satisfies the *Johnson/Camden I* factors. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 772 and 775 (11th Cir. 1991) (citing *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974)). As an initial matter, the second, sixth, and tenth *Johnson/Camden I* factors — the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively — support the proposed award.

This case was novel and difficult. First, it is an open issue as to what evidence it takes to prove DAI "willfully" violated the FACTA. Moreover, the failure to prove willfulness has spelled doom for the plaintiffs in many FACTA cases. *See Keller v. Macon Cty. Greyhound Park, Inc.*, No. 3:07-CV-1098-WKW, 2011 WL 1559555, at *4–5 (M.D. Ala. Apr. 25, 2011), *aff'd,* 464 F. App'x 824 (11th Cir. 2012) (summary judgment for merchant even though its system printed receipts violating the FACTA because violation caused by vendor who fixed the software after system crash).

Second, although the Court denied (*see* Order [ECF No. 27]), Defendant's Motion to Dismiss for lack of standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), at the time the parties filed this settlement courts had granted such motions in numerous FACTA cases. *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 728 (7th Cir. 2016); *Crupar-Weinmann v. Paris Baguette, Am., Inc.*, 235 F. Supp. 3d 570, 577 (S.D.N.Y. 2017). Indeed, numerous courts

9

continued to find no standing in FACTA cases, including several appellate decisions. *See Noble v. Nev. Check Cab Co.*, 726 F. App'x 582, 573 (9th Cir. Mar. 9, 2018); *Katz v. Donna Karan Co. Store, LLC*, 872 F.3d 114, 121 (2d Cir. 2017).

Third, even after the settlement was reached, Class Counsel faced the task of identifying and locating several million class members with nothing but transaction information and incomplete credit/debit card account number information. This involved more than 100 subpoenas and took substantial effort and skill to successfully complete.

Even if Plaintiff proved a "willful" violation and successfully certified a class, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011).

In addition to these myriad challenges, the ability to recover fees and expenses was contingent on a successful outcome. Class Counsel had to advance the fees and expenses and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (alteration added).

Indeed, a "contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) (internal quotation marks and citations omitted). The risk was enhanced here by the fact that Class Counsel were up against a Defendant with sophisticated class action defense counsel, and the difficulty of proving willfulness. *See Pinto*, 513 F. Supp. 2d at 1339 ("Cases recognize that attorneys' risk is perhaps the foremost factor in determining an appropriate fee award." (internal quotation marks and citations omitted)).

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. Like this case, Class Counsel noted prior FACTA class actions required substantial litigation activity to achieve significant settlements. Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of time and out-of-pocket expenses and risk getting nothing; especially given a track record for losing on summary judgment, the inherent possibility of failing to certify the class, the risk of losing on summary judgment or at trial, the risk of losing any victory on appeal.

Finally, although Class Counsel achieved a record-breaking result, that was anything but certain when they took the case, as evidenced by the varying opinions on the FACTA as to both willfulness and standing, even at the time it was settled. Further, Class Counsel has had success in some FACTA class actions but stood to recover nothing in others. *See Kirchein v. Pet Supermarket, Inc.*, 297 F. Supp. 3d 1354, 1355–56 (S.D. Fla. 2018) (defendant successfully

11

moved to dismiss case for lack of standing *after* agreeing to settlement in FACTA case and after settlement granted preliminary approval). There is certainly no guarantee of success at the class certification stage, on the merits if the case is litigated, or on any appeal that may follow. Accordingly, this factor also weighs in favor of approving the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Undesirability and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight." (internal quotation marks and citations omitted)).

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation "with particular emphasis on the 'monetary results achieved' in the case" by class counsel. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("In common fund cases . . . the monetary amount of the victory is often the true measure of success . . . ." (alterations added)). Here, the parties' mediated agreement provides a Settlement Fund of $30,900,000, which is represented to be the largest all cash FACTA settlement in history by far, and many orders of magnitude greater than the recoveries obtained in typical FACTA settlements. While FACTA settlements commonly involve coupons or gift cards, this settlement provides cash, and nothing will revert to Defendant. This factor thus weighs strongly in favor of the proposed fee award.

The first, fourth, and seventh *Johnson/Camden I* factors — the time and labor, preclusion of other employment, and time limitations imposed, respectively

12

— also support the proposed award. Class Counsel engaged in litigation against a well-heeled Defendant and sophisticated defense counsel. The work needed included counsel's pre-suit investigation; preparing the complaint; defeating Defendant's motion to dismiss and subsequent motion for interlocutory appeal; conducting significant written and document discovery; engaging and presenting an expert; deposing Defendant's corporate representatives and experts; engaging in *Daubert* motion practice; moving for class certification; preparing for and attending two full-day mediations; conducting additional extensive negotiations beyond the mediation to reach the actual settlement; securing preliminary approval of the settlement; and executing a campaign involving a hundred subpoenas, extensive communications, and numerous motions as part of a year-long "second litigation" to identify and locate the class members. This work diverted substantial time and resources from other matters. *See Yates v. Mobile Cty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (the expenditure of time "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.").

This record settlement also reflects Class Counsel's experience in handling large FACTA cases. Class Counsel knew the work that achieving a comparable outcome would take based on their previous success in similar actions, the issues they faced at every stage, the potential recovery to be had, and the chance of achieving it. Evidently this experience enabled Class Counsel to convince Defendant not only that Class Counsel were willing and able to do what it took to achieve an excellent result, but that they genuinely understood what the case was

worth given the law, facts and risks (for both sides). Even then, the case did not settle until after the close of discovery, and after Plaintiff moved for class certification.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases, also support approval. Many consumer class actions – including many FACTA cases in this District – have granted one-third percentage-of-the-fund awards. And the non-FACTA cases were more desirable than this case because the plaintiff did not have to prove willfulness.

Finally, the remaining *Johnson/Camden I* factor — the skill required to perform the legal services properly; and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As noted, Class Counsel achieved a record settlement that confers substantial monetary and non-monetary benefits on the class despite litigating against a sophisticated and well-financed Defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced." (alteration added; citation omitted)).

This outcome was made possible by Class Counsel's experience in litigating class actions of similar size, scope and complexity. Class Counsel were able to steer this case to an outcome greater than any other FACTA settlement ever achieved, while avoiding exposing the Class's recovery to the risks (such as contested class certification and summary judgment proceedings) faced in prior cases. Class Counsel regularly engage in complex litigation involving consumer

issues, and they have been appointed class counsel in numerous cases. The *Johnson/Camden I* factors thus confirm the proposed attorney's fee award is reasonable.

14. Accordingly, Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses **[ECF No. 160]** is **GRANTED**. Class Counsel are awarded **$10,300,000** from the Settlement Fund as their fee award, which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund consistent with the terms of the Settlement Agreement. Class Counsel are also awarded **$30,837.80** for their expenses which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund consistent with the terms of the Settlement Agreement. Class Counsel shall be responsible for allocating and shall allocate this award of attorney's fees, costs, and expenses among Class Counsel.

15. Plaintiff, Shane Flaum, is compensated **$20,000** for his efforts in this case. Plaintiff, Jason Alan, is compensated **$10,000** for his efforts in this case.

16. The banks that requested compensation for responding to subpoenas shall be awarded the amounts they invoiced for a total of **$32,324.25**, except that American Express shall receive **$2,200**, U.S. Bank shall receive **$5,000**, and Fifth/Third Bank shall receive **$2,626**. These amounts shall be paid by the Claims Administrator.

17. Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Order, to protect and effectuate this Order, and for any other necessary purpose. The Class Representatives, Settlement Class Members, any Publication Notice Class Members, and Defendant are

deemed to have irrevocably submitted to the exclusive jurisdiction of the Court, for any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, but only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Order, the Court retains exclusive jurisdiction over any such suit, action, or proceeding. Solely for purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, the parties are deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum.

18. All Settlement Class Members, from this day forward, are permanently barred and enjoined from: (a) asserting any Released Claims in any action or proceeding; (b) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action or proceeding based on any of the Released Claims; and (c) organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, for purposes of pursuing any action or proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending or future action or proceeding) based on any of the Released Claims or the facts and circumstances relating to them.

19. All Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member and that have been released under the Settlement Agreement and this Order.

20. This Order and the Settlement Agreement may be filed in any action against or by any of Defendant's Releasees, as that term is defined here and the Settlement Agreement, to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

21. Without further order of the Court, the settling parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

22. This Order shall be effective after entry. In the event the Order is reversed or vacated pursuant to a direct appeal in this action or the Settlement Agreement is terminated pursuant to its terms, all orders and releases in connection with the Settlement Agreement are void.

23. This action is **DISMISSED with prejudice** against Class Representatives and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

**DONE AND ORDERED** in Miami, Florida, this 11th day of March, 2019.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record